Payam Shahian (SBN 228406)
Pshahian@slpattorney.com
STRATEGIC LEGAL PRACTICES, APC
1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone:  (310) 277-1040
Facsimile:  (310) 943-3838

Attorneys for Plaintiffs
Anna Sadowska, Yanick Godbout
and Tonya DenDekker

[*additional counsel listed on signature page*]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ANNA SADOWSKA, YANICK GODBOUT, and TONYA DENDEKKER, individually, on behalf of a class of similarly situated individuals, | ) ) ) ) ) ) | CV 2: 11-cv-00665 (AHM)  (AGPX) |
| Plaintiffs, | ) ) ) | **STIPULATION TO FILE THIRD AMENDED COMPLAINT** |
| v. | ) ) ) |  |
| VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AG, and AUDI AG, | ) ) ) ) ) |  |
| Defendants. | ) ) ) ) |  |
| ——————————————— | ) |  |

Plaintiffs Anna Sadowska, Yanick Godbout and Tonya DenDekker ("Plaintiffs") and Defendants Volkswagen Group of America, Inc., Volkswagen AG and Audi AG ("Defendants") (collectively, the "Parties"), through their undersigned counsel, hereby stipulate and agree as follows, and respectfully request that the Court issue an order consistent with the following Stipulation:

1.     In connection with Plaintiffs' Motion for Preliminary Approval of a Class Action Settlement, Plaintiffs shall file by January 11, 2013, the [proposed]Third Amended Complaint in the form attached hereto as Exhibit 1.

2.     Defendants do not have to file Answers to the Third Amended Complaint. Each Defendant's Answer to the Second Amended Complaint, including all denials, other responses and affirmative defenses contained therein, will apply in all respects to the allegations and amended allegations contained in the Third Amended Complaint, and shall serve as an Answer on behalf of said Defendant to the Third Amended Complaint.

3.     In addition, each Defendant's Answer to the Second Amended Complaint will be deemed to incorporate any and all additional affirmative defenses which may be applicable to any amended allegation contained in the Third Amended Complaint including, but not limited to, any affirmative defenses available under the laws of any states applicable to Plaintiffs' claims.

**SO STIPULATED.**

Dated:  December 21, 2012                    Respectfully submitted,

STRATEGIC LEGAL PRACTICES APC

By:___/S/_____
              Payam Shahian

1

2

THE LAW OFFICE OF ROBERT STARR
Robert Starr

3

4

INITIATIVE LEGAL GROUP
G. Arthur Meneses

5

Attorneys for PLAINTIFFS

6

7

Dated:  December 21, 2012

HERZFELD & RUBIN LLP

8

9

10

11

By:___/S/_____
Craig L. Winterman
Stephen J. Kelly
Attorney for DEFENDANT,
VOLKSWAGEN GROUP OF AMERICA,
INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STIPULATION TO FILE THIRD AMENDED COMPLAINT**

# Exhibit 1

*Sadowska, et al. v. Volkswagen Group of America, Inc., et al.*
*2:11-cv-00665-AHM-AGR*

Payam Shahian
e-mail: pshahian@slpattorney.com
STRATEGIC LEGAL PRACTICES, APC
1875 Century Park East, Suite 700
Los Angeles, CA 90067
Telephone: (310) 277-1040
Facsimile: (310) 943-3838

[*Additional counsel listed on signature page*]

Attorneys for Plaintiffs Anna Sadowska, Yanick Godbout, and Tonya DenDekker

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| ANNA SADOWSKA, YANICK GODBOUT, and TONYA DENDEKKER, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AG, and AUDI AG,,<br><br>Defendants. | Case No.:  CV11-00665 AHM (AGRx)<br><br>District Judge:  Hon. A. Howard Matz<br><br>**PLAINTIFFS' [PROPOSED] THIRD AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>(1)  Violations of California Consumer Legal Remedies Act<br>(2)  Violations of Unfair Business Practices Act – Secret Warranty<br>(3)  Violations of Unfair Business Practices Act<br>(4)  Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act<br>(5)  Breach of Written Warranty Under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.<br>(6)  Breach of Express Warranty<br><br>**JURY TRIAL DEMANDED** |

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

Exhibit 1

**INTRODUCTION**

1.      Plaintiffs Anna Sadowska, Yanick Godbout, and Tonya DenDekker, ("Plaintiffs") bring this action for themselves and on behalf all persons in the State of California and the United States of America who purchased or leased 2002-2006 Audi vehicles equipped with the Multitronic CVT transmission ("CVT Transmission") manufactured, distributed, and sold by Volkswagen Group of America, Inc., Volkswagen AG, Audi AG, and/or its related subsidiaries or affiliates ("Volkswagen" or "Defendant") (collectively, "Class Vehicles").

2.      Because of defects in the design, manufacture, and assembly of the CVT Transmission ("the CVT Transmission defect" or "Transmission defect"), the CVT Transmission and/or its related parts is by its nature susceptible to premature breakdown and mechanical failure.  When said premature breakdown and mechanical failure occur, the affected Class Vehicles are no longer safe to operate and require repairs costing hundreds and, in most instances, several thousand dollars.  Furthermore, due to the nature of the CVT Transmission defect, consumers have frequently experienced and will continue to experience unexpected and premature CVT Transmission failure while driving.  CVT Transmission failure while driving results in unsafe conditions, including but not limited to loss of forward propulsion, acceleration surging, significant delays in acceleration, Class Vehicles operating in emergency running mode, drivers receiving error messages, stalling, and the inability to use the reverse gear.

3.      These conditions present a safety hazard because of sudden and unexpected transmission failure that Class Vehicles can experience while in operation.  Thus, the Class Vehicles and their CVT transmissions can fail, suddenly and unexpectedly, at any time and under any driving condition or speed, thereby contributing to traffic accidents, which can result in personal injury or death.

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

4.      Since 2002, if not before, Volkswagen has known that the CVT Transmissions were defectively designed, assembled, and manufactured.  Rather than alerting Class Members of this safety hazard and offering to repair the Class Vehicles, Volkswagen has concealed this problem from its customers at the time of purchase or lease and thereafter. Indeed, to avoid liability for the CVT Transmission defect, Defendant and its dealers have told Class Members' that the CVT transmissions are operating as designed or that they could not verify the problem because the premature transmission failures did not manifest themselves during the consumers' repair visits, even though Volkswagen has known (or should have known) about the premature CVT transmission failures for years and the fact that they can intermittently experience premature failure.

5.      The premature CVT Transmission failure is the result of a systemic problem relating to the design, assembly, and manufacture of the CVT Transmission and/or its related parts.  For example, the CVT Transmission has numerous defects, including defects relating to the Transmission Control Module ("TCM") and the Automatic Transmission Fluid Pump Bushing.  These problems are systemic, result in premature CVT Transmission failure, cause consumers to incur unreasonable and unexpected expense.

6.      Because Volkswagen will not notify Class Members that the CVT Transmission is defective, Plaintiffs and Class Members (as well as members of the general public) are subjected to dangerous driving conditions that often occur without warning.  As a result of the CVT Transmission failures, Volkswagen has also profited by selling replacement parts to Class Members.  Indeed, Volkswagen continues to profit while Plaintiffs and Class Members are continually subjected to dangerous driving conditions and significant repair costs.

7.      Plaintiffs are also informed and believe and based thereon allege that as the number of complaints increased, and Class Members grew dissatisfied

[PROPOSED] THIRD AMENDED CLASS ACTION COMPLAINT

Exhibit 1

with the Class Vehicles' CVT Transmission problems, Volkswagen was forced to internally acknowledge that the Class Vehicles equipped with the CVT Transmissions suffered from inherent defects.

8.     Plaintiffs are informed and believe and based thereon allege that as the number of consumer complaints about the CVT Transmission Defect increased, in June 2009, Defendant issued a secret technical service bulletin ("TSB") to only its dealers acknowledging one of the multiple manufacturing and/or design defects contained in the Class Vehicles and their CVT Transmissions.

9.     In the 2009 secret TSB, Volkswagen describes the nature of the CVT Transmission defects and provides for several solutions to repair the defect, including the replacement of the entire transmission:

> **A/T – Vehicle Won't Move In Any Gear**
>
> . . .
>
> REVISION HISTORY
>
> The vehicle will not move in any gear.
>
> Technical Background
>
> ATF pump border bushing may fail and cause a loss of oil pressure.   The ATF pump is incorporated in the <u>valve body</u>.  The pump is not a serviceable part.
>
> Production Solution
>
> Improved ATF pump incorporated in the <u>valve body</u> from January 2004 vehicle production.   (Emphasis added.)
>
> Service
>
> . . .
>
> 1.     Run the engine at idle.  Set the parking brake and place the transmission selector lever in drive (D). Do not press the brake pedal once drive is engaged.   Read and print MVB Troup 15.   If display field 3 reads 0 (zero) or the difference between MVB 15/3 (Actual pressure) and 15/4 (Nominal pressure) is greater than 2 bar, proceed to line 3.
>
> 2.     If the difference between MVB 15/3 and 15/4 is less than 2 bar, contact the Technical Assistance Center for repair authorization.

Exhibit 1

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

[Figure 1.]

3.   If <u>ATF</u> contains metal particles larger than 1mm (Figure 1), replace the transmission and the ATF pressure filter according to the Repair Manual.

[Figure 2.]

3.   If no metal particles or only slightly simmering particles are found in the ATF (Figure 2), remove the <u>valve body</u> and inspect the oil pump drive gear on the end of the shaft protruding from the valve body (Figure 3).

[Figure 3.]

4.   If the gear is chipped or damaged, replace the transmission.

5.   If the gear is not damaged, replace the <u>valve body</u> according to the Repair Manual.

10.   Thus, Volkswagen acknowledges that the problems with the ATF pump border bushings installed in the Class Vehicles have been solved by a new design and installation of an "improved ATF pump incorporated in the valve body." While the 2009 TSB offers to cover the repair costs of those vehicles that are covered under warranty, Plaintiffs are informed and believe and based thereon allege that both before and after the issuance of the 2009 TSB, and in effort to mollify those consumers who complained loudly enough about the CVT Transmission Defect, Defendant instituted a clandestine program to secretly reimburse or pay for the cost of replacing or repairing the CVT Transmissions of those Class Vehicles that suffered from premature transmission failures, even when those failures occurred outside of the vehicle's 4-year/50,000-mile express warranty period.[1]

11.   Plaintiffs are also informed and believe and based thereon allege that to mollify those consumers who complained loudly enough, Defendant implemented another clandestine program to secretly reimburse or pay for repair costs of those Class Vehicles that suffer from the CVT Transmission Defect and

---

[1] Indeed, at the time the TSB was issued, the express warranty of (if not all) most Class Vehicles had expired.

[PROPOSED] THIRD AMENDED CLASS ACTION COMPLAINT

Exhibit 1

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

the related damage it causes, even when the CVT Transmission Defect and the related damage that it causes occurs outside a vehicle's 4-year/50,000-mile express warranty period.

12.     Plaintiffs are informed and believe and based thereon allege that Volkswagen's secret free repair/replacement and/or reimbursement programs were strictly limited to the most persistent consumers, *i.e.*, those who make a repair visit and complain loudly enough about the problem.  For example, Defendant refused to pay/reimburse Plaintiffs for all repair costs associated with their premature CVT Transmission Defect failures.

13.     By extending its new-car warranty to cover the repair and/or replacement CVT transmission failures before and after it issued the 2009 TSB (and by doing so even if that warranty had expired), as well as by incorporating a new improved ATF pump in the valve body of the Class Vehicles CVT transmission without informing consumers about this solution, Defendant has expanded or extended the consumer's warranty beyond its stated limit and has offered to pay all or any part of the cost of repairing or reimbursing consumers for a condition that may substantially effect vehicle durability, reliability, or performance.  Volkswagen, therefore, is obligated to comply with the provisions of the California Secret Warranty Law, which is codified at California Civil Code §§ 1795.90-1795.93.

14.     Volkswagen knows (or should have known) that the Class Vehicles and their CVT Transmissions are defective and not fit for their intended purpose. Nevertheless, Volkswagen failed to disclose and actively concealed this defect from Plaintiffs and the Class Members at the time of purchase or lease and thereafter.

15.     Despite notice of the defect from various internal sources, Volkswagen has not recalled the Class Vehicles to repair the CVT Transmission defect, has not offered all of the Class Members a suitable repair or replacement

Exhibit 1

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

free of charge, and has not offered to reimburse all Class Members who incurred costs relating to the CVT Transmission defect, including but not limited to costs related to inspection, diagnosis, repair, and replacement of CVT Transmissions.

16.     As a result of Volkswagen's misconduct alleged herein, Plaintiffs and Class Members have been harmed and have suffered actual damages in that the Class Vehicles' CVT Transmissions are experiencing continuous and progressive failure problems, and have prematurely failed and will continue to prematurely fail.

## PARTIES

**Plaintiff Anna Sadowska**

17.     Plaintiff Anna Sadowska ("Sadowska") is a California citizen who resides in Los Angeles, California.  On June 16, 2003, Sadowska leased a new 2003 Audi Cabriolet.  Subsequent to Sadowska leasing this vehicle, on or about June 30, 2007, Sadowska obtained a loan from Audi Bank USA to pay off the lease on her vehicle, paid off that lease, and purchased the vehicle.

18.     Sadowska purchased her vehicle primarily for her personal, family, or household purposes.  The vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Volkswagen, and bears the Vehicle Identification No. WAUAC48H33K020827.

19.     Only after Sadowska purchased the vehicle did the transmission not function properly.

20.     In or about September 2010 and with less than 45,000 miles on the vehicle's odometer, Sadowska took her vehicle to Santa Monica Audi complaining about the CVT Transmission, who in turn charged her $180.00 to diagnose and repair the transmission problems.

21.     After charging Sadowska $180.00, the Audi dealer informed Sadowska that the CVT Transmission installed in her vehicle was not functioning properly and that it needed to be replaced at a cost of $7,184.85.

Exhibit 1

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

After Sadowska complained about enormous cost of replacing the transmission on a fairly new vehicle, she was informed that Volkswagen had agreed to pay for 50% of the cost associated with repairing the CVT Transmission, leaving a balance of approximately $3,592.42 that Sadowska would be required to pay. Because Volkswagen refused to pay the entire cost of repair, Plaintiff did not repair her transmission at the Audi dealer.

**Plaintiff Yanick Godbout**

22.   Plaintiff Yanick Godbout ("Godbout") is a California citizen who resides in Los Angeles, California.  In August 2007, Plaintiff purchased a certified pre-owned 2003 Audi A6 with approximately 51,759 miles on the odometer.  Plaintiff's Certified Pre-Owned Warranty provided, in part:

> If the Audi New Vehicle Limited Warranty has expired at the time of Certified pre-owned purchase, the Audi Certified pre-owned Limited Warranty provides coverage from the Certified pre-owned purchase date for 2 years or up to 50,000 miles, whichever occurs first.  In no event will coverage exceed 100,000 total vehicle miles.
>
> ------
>
> What is Covered?
>
> The following items have Audi Certified pre-owned Limited Warranty coverage on authorized repairs to correct a manufacturer's defect in materials or workmanship.
>
> ------
>
> **Automatic transmission —** selector lever and mechanism, Tiptronic® switches and controls, transmission control module, transmission speed sensor, mounts, multifunction switch, shift lever lock and associated switches, all planetary gears and bearings, all internal clutches, all internal brake bands, ATF pump, ATF cooler transmission housing, valve body, governor, torque converter, valve body, valve body electrical.

23.   Godbout purchased his vehicle primarily for his personal, family, or household purposes.  The vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Volkswagen, and bears the Vehicle

Exhibit 1

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

1   Identification No. WAUJT64B03N030064.

2   24.   Only after Godbout purchased the vehicle did the transmission not

3   function properly.

4   25.   On or about March 13, 2009, with 69,769 miles on the odometer,

5   Godbout took his vehicle to Santa Monica Audi complaining that "when vehicle

6   is cold and putting into reverse vehicle won't move when it does it jerks…"  The

7   dealer verified the complaint and provided new software and made adjustments

8   to the transmission control module per Defendant's TSB.

9   26.   On April 30, 2009, with approximately 71,775 miles on the

10   odometer, Godbout again took his vehicle to Santa Monica Audi complaining

11   about transmission problems.  The dealer verified Plaintiff's complaint, ordered

12   parts, and confirmed that Plaintiff had paid an out of pocket deductible for a

13   related repair on a prior visit.

14   27.   On June 16, 2010, with approximately 83,989 miles on the

15   odometer, Plaintiff visited Santa Monica Audi complaining that the transmission

16   lights were illuminating.  The dealer verified Plaintiff's complaint, charged

17   Plaintiff $175 for its diagnosis, and recommended that Plaintiff replace the faulty

18   Transmission Control Module at a cost of approximately $2,275.  Plaintiff did

19   not replace the transmission at Santa Monica Audi.

20   28.   On or about June 25, 2010, with 83,998 miles on the vehicle's

21   odometer, Godbout took his vehicle to German Car Service in Santa Monica,

22   California again complaining that the transmission lights were illuminating.

23   German Car Service verified Plaintiff's complaint, charged Plaintiff $80.00 for

24   its diagnosis, and advised Plaintiff to replace the faulty Transmission Control

25   Module per "Audi TSB recommend[ations]."

26   29.   On August 19, 2010, Godbout replaced the transmission control

27   module at a cost of approximately $2,109.47.  However, the repair failed to

28   correct the defect alleged herein and Mr. Godbout received a full refund.

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

30.     Subsequent to this repair, Mr. Godbout was advised that he has to pay approximately $5,692.31 to replace the entire transmission, as oppose to only the Transmission Control Module.

**Plaintiff Tonya DenDekker**

31.     Plaintiff Tonya DenDekker ("DenDekker") is a California citizen who resides in Aliso Viejo, California.  In 2006, DenDekker purchased a new 2006 Audi A6 from an authorized Audi dealer in California.

32.     DenDekker purchased her vehicle primarily for her personal, family, or household purposes.  The vehicle was manufactured, sold, distributed, advertised, marketed, and warranted by Volkswagen, and bears the Vehicle Identification Number WAUAH74F36N173007.

33.     Only after DenDekker purchased the vehicle did the transmission not function properly.

34.     In or around 2006, with approximately 5,000 miles on the odometer, DenDekker noticed a delay in shifting from reverse to drive and when accelerating out of a stop.  DenDekker complained of these transmission issues to an authorized dealer while under warranty, but was told that those symptoms were normal.

35.     On or around October 1, 2012, with approximately 80,919 miles on the odometer, DenDekker's vehicle failed to shift out of park and was not operable.  DenDekker had her vehicle towed to Audi of Mission Viejo, and her husband informed the dealer that the vehicle was stuck in park and unable to get into gear.  The dealer recommended that DenDekker replace her transmission control module and quoted her a price of $1,881.90 for the repair.

36.     Not satisfied with the high repair costs, on or around October 2, 2012, DenDekker brought her vehicle to Sterling Auto Concepts in Laguna Niguel, California, complaining that the vehicle had gotten stuck in park and unable to get into gear.  The mechanic determined that the transmission control

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700 LOS ANGELES, CA 90067

1   module needed to be replaced and did so at an out of pocket cost to DenDekker

2   of approximately $1,700.

3   **DEFENDANTS**

4       37.    Volkswagen Group of America, Inc. is a corporation organized and

5   in existence under the laws of the State of New Jersey and registered with the

6   California Department of Corporations to conduct business in California.  At all

7   time relevant herein, Volkswagen Group of America, Inc. was engaged in the

8   business of designing, manufacturing, constructing, assembling, marketing,

9   distributing, and selling automobiles and other motor vehicles and motor vehicle

10  components in Los Angeles County and throughout the United States of

11  America.

12      38.    Volkswagen AG is a foreign corporation headquartered at Berliner

13  Ring 2 38440 Wolfsburg, Federal Republic of Germany.  At all relevant times,

14  Volkswagen AG took part in designing, engineering, manufacturing, testing,

15  marketing, supplying, selling, and distributing motor vehicles, including Class

16  Vehicles, in Los Angeles County, California and throughout the Unites States of

17  America.  Through its wholly owned subsidiaries and agents, Volkswagen AG

18  markets its products in a continuous manner in the Unites States, including

19  California and Los Angeles County.  Volkswagen AG maintains a Detroit Office

20  and a Volkswagen AG Investor Relations office in Herndon, Virginia.

21      39.    Audi AG is a foreign corporation located at Auto-Union-Str. 2 D-

22  85045 Ingolstadt, Germany.  At all relevant times, Audi AG took part in

23  designing, engineering, manufacturing, testing, marketing, supplying, selling,

24  and distributing motor vehicles, including Class Vehicles, in Los Angeles

25  County, California and throughout the Unites States of America.  Through its

26  subsidiary, Audi of America, LLC, Audi AG markets its products in a

27  continuous manner in the Unites States, including in California and Los Angeles

28  County.  Audi of America, LLC is the entity through which Audi AG sells Audi

Exhibit 1

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

1   vehicles in the United States.  Audi AG maintains its principal place of business

2   in Herndon, Virginia.

3       40.    Plaintiffs are informed and believe, and thereon allege, that each and

4   all of the acts and omissions alleged herein was performed by, or is attributable

5   to, Volkswagen Group of America, Inc., Volkswagen AG, and Audi AG

6   (collectively, "Volkswagen" or "Defendant"), each acting as the agent for the

7   other, with legal authority to act on the other's behalf.  The acts of any and all

8   Defendant were in accordance with, and represent, the official policy of

9   Defendant.

10      41.    At all relevant times, Defendant, and each of them, ratified each and

11  every act or omission complained of herein.  At all relevant times, Defendant,

12  and each of them, aided and abetted the acts and omissions of each and other

13  Defendant in proximately causing the damages herein alleged.

14      42.    Plaintiffs are informed and believe, and thereon allege, that each of

15  said Defendants is in some manner intentionally, negligently, or otherwise

16  responsible for the acts, omissions, occurrences, and transactions alleged herein.

                            **JURISDICTION**

18      43.    This is a class action.

19      44.    Members of the Proposed Class are citizens of states different from

20  the home state of Defendant.

21      45.    On information and belief, aggregate claims of individual Class

22  Members exceed $5,000,000.00, exclusive of interest and costs.

23      46.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

                               **VENUE**

25      47.    Volkswagen, through its business of distributing, selling, and

26  leasing VW Vehicles, has established sufficient contacts in this district such that

27  personal jurisdiction is appropriate.  Defendant is deemed to reside in this district

28  pursuant to 28 U.S.C. § 1391(a).   In addition, a substantial part of the events or

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

Exhibit 1

omissions giving rise to these claims and a substantial part of the property that is the subject of this action are in this district.

48.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## APPLICABLE LAW

49.     The applicable law is pleaded in the claims below.

## FACTUAL ALLEGATIONS

50.     For years, Volkswagen has designed, manufactured, distributed, sold, and leased the Class Vehicles.  Volkswagen has sold, directly or indirectly, through dealers and other retail outlets, thousands of Class Vehicles equipped with the CVT Transmission in California and Nationwide.

51.     This lawsuit concerns certain Class Vehicles that are equipped with a factory-installed CVT Transmission.

52.     The CVT Transmission is a transmission based upon mechanical technology originally contemplated by Leonardo da Vinci in 1490.

53.     Conventional automatic transmissions have a finite number of gears, usually between three and six.  The appropriate gear is automatically selected by the vehicle based on several factors, including vehicle speed, engine revolutions per minute, incline/decline of the vehicle, and vehicle throttle.

54.     By contrast, a continuously variable transmission, *i.e.*, "CVT" uses[2] two pulleys and a drive belt that connects the pulleys to each other.  The pulleys automatically adjust themselves to different circumferences by increasing or decreasing the circumference of one pulley, and simultaneously decreasing or increasing, respectfully, the circumference of the other pulley.  The concept behind operation of the CVT transmission is that the transmission never disengages in order to change the transmission's gear ratio, and that the

_____

[2] Some potential benefits of CVT transmissions are that they provide more useable power, better fuel economy and a smoother driving experience than a traditional automatic transmission.

Exhibit 1

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

transmission is capable of adjusting to a very broad number of gear ratios in order to find a suitable ratio for the particular driving circumstances. Some CVT transmissions, such as the CVT Transmission (*i.e.*, the transmission in the Class Vehicles), do have designated gear ratios that can be used when the transmission is being used in a simulated "manual transmission" mode.

55.     Prior to 2002, for many years, Volkswagen was in the process of designing and developing its own CVT to be used in a passenger vehicle. In 2002, Volkswagen brought its first-generation CVT transmission to the market and installed it in the Class Vehicles.

56.     Unfortunately, the CVT Transmission was plagued with numerous defects. These defects resulted in functional failure, including but not limited to loss of forward propulsion, acceleration surging, acceleration delays, Class Vehicles operating in emergency running mode, drivers receiving error messages, stalling, and the inability to use the reverse gear.

57.     Dating back to 2002, Volkswagen was aware of the defects of the CVT Transmission. Volkswagen, however, failed and refused to disclose these known defects to consumers. As a result of this failure, Plaintiffs and Class Members have been damaged.

**The CVT Transmission Defect Poses An Unreasonable Safety Hazard**

58.     Class Vehicles have habitually suffered CVT Transmission failure while in traffic, creating a very serious safety hazard. These failures often result in loss of forward propulsion, acceleration surging, significant delays in acceleration, Class Vehicles operating in emergency running mode, drivers receiving error messages, stalling, and the inability to use the reverse gear. Numerous consumers have lodged complaints with the National Highway Transportation Safety Administration ("NHTSA").

59.     Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced problems with the CVT Transmission. Complaints

filed by consumers with the NHTSA and posted on the Internet demonstrate that the defect is widespread and dangerous, expensive to repair, and that it manifests without warning.  The complaints also indicate Defendant's awareness of the problems with the CVT Transmission, the costs associated with the necessary repairs, and how potentially dangerous the defective condition is for consumers. Following are some safety complaints relating to CVT Transmission failure (spelling and grammar mistakes remain as found in the original):

NHTSA Complaints:

- MY 2003 AUDI A4 3.0 WITH CVT TRANSMISSION, PURCHASED NEW 2/2004, HAS 8000 MILES ON IT. DURING THE PAST 2 WEEKS (THE PAST 500 MILES) I HAVE NOTED THE FOLLOWING PROBLEM 4 DIFFERENT TIMES:  UPON PRESSING THE ACCELERATOR WHILE AT A COMPLETE STOP, THE TRANSMISSION SEEMS NOT TO "ENGAGE" AND THE VEHICLE DOES NOT MOVE. UNFORTUNATELY, DURING 3 OF THOSE OCCASIONS, MY VEHICLE WAS ON A DOWNWARD INCLINE AND I WAS ATTEMPTING TO MAKE A RIGHT TURN INTO A STREET WITH TRAFFIC.  I THEREFORE COASTED INTO TRAFFIC BUT WAS UNABLE TO ACCELERATE; I WAS VERY LUCKY NOT TO HAVE BEEN HIT BY THE TRAFFIC COMING FROM MY LEFT.   AFTER WAITING A FEW LONG SECONDS, THE TRANSMISSION WOULD EVENTUALLY SEEM TO "ENGAGE", AND I WOULD BE ON MY WAY.

- MY VEHICLE IS AN AUDI A4 3.0.   I ORIGINALLY PURCHASED IN 6/2003.   ON MULTIPLE OCCASIONS, WHEN I HAVE PUT THE CAR IN REVERSE THE CAR BEGINS TO BUCK/SHAKE VIOLENTLY FOR SEVERAL SECONDS UNTIL I PRESS ON THE BRAKE PUT THE CAR BACK INTO PARK.  I HAVE TAKEN IT TO THE AUDI DEALERSHIP TO ADDRESS THIS PROBLEM ON SEVERAL OCCASIONS WHILE IT WAS UNDER WARRANTY AND THEY WERE UNABLE TO DIAGNOSE THE PROBLEM. MOST RECENTLY, AT THE BEGINNING OF THIS YEAR. HOWEVER, LAST WEEK AS I WAS RETURNING HOME, SMOKE BEGAN TO COME OUT OF THE ENGINE.   I BROUGHT IT TO AUDI SERVICE AND I WAS TOLD TODAY THAT MY TRANSMISSION WAS LEAKING AND WAS DRIPPING ONTO MY CATALYTIC CONVERTER WHICH WAS THE CAUSE FOR THE SMOKE.  HOWEVER, I AM NOW NO LONGER COVERED BY MY WARRANTY.

[PROPOSED] THIRD AMENDED CLASS ACTION COMPLAINT

Exhibit 1

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

IT SEEMS LIKE THE CVT TRANSMISSION ON THIS CAR IS PRONE FOR FAILURE AFTER 50,000. THEY WANT TO TAKE OUT MY TRANSMISSION AND EITHER REPLACE/REPAIR IT (IF POSSIBLE). I CONTACTED AUDI CUSTOMER CARE AND THEY CONTACTED AUDI SERVICE. THEY ARE CURRENTLY IN DISCUSSION WITH REGARDS TO THE COVERAGE FOR THE REPAIRS. THEY SHOULD HAVE FOUND THE PROBLEM A WHILE AGO WHEN I BROUGHT IT IN SEVERAL TIMES BEFORE.

- AT A STOPLIGHT YESTERDAY, THE CVT TRANSMISSION SUDDENLY FAILED. WHEN I PRESSED THE ACCELERATOR, THE VEHICLE WOULD ONLY VERY SLOWLY LURCH FORWARD WITH A GREAT DEAL OF "GRINDING" NOISE. I WAS BARELY ABLE TO LIMP OUT OF THE FLOW OF TRAFFIC AND THEN HAD IT TOWED TO MY SHOP. MY MECHANIC TODAY TOLD ME THE CVT (CONTINUOUSLY VARIABLE TRANSMISSION) FAILED AND NEEDS REPLACEMENT. NEW, THE PART ALONE IS $7,500, WITH ANOTHER $1,000+ IN LABOR. MY 2003 A4 HAS BEEN METICULOUSLY MAINTAINED SINCE NEW AND ONLY HAS 75,000 MILES. I HAVE FOUND CONSIDERABLE "TRAFFIC" ONLINE REGARDING MAJOR PROBLEMS WITH AUDI CVT - BUT VERY LITTLE ON YOUR SITE. THIS IS S A MAJOR DESIGN PROBLEM THAT CONSUMERS SHOULD BE MADE AWARE OF.

- AUDI-A4-SEDAN-CVT TRANSMISSION. SLIPPING GEAR WHILE VEHICLE IS MOVING AND BEGINNING DRIVE FROM STOPLIGHT. SAFETY CONCERN FOR FAMILY. HISTORY OF A PROBLEM AND NO RECALL BY AUDI. HOW CAN THERE BE NO RECALL.

- 2004 AUDI A4 1.8L TURBO - THE CAR SUFFERS FROM A PROBLEM THAT BEGINS WITH A FLASHING OF THE GEAR SELECTOR RANGE (PRNDS). THIS OCCURS CONSISTENTLY, EVERY TIME THE VEHICLE IS OPERATED. WHEN PRNDS IS FLASHING THE VEHICLE POSSESSES A SERIOUS SAFETY CONCERN THAT HAS OCCURRED (3) TIMES SINCE THE ONSET OF THIS CONDITION. WHILE THE GEAR SELECTOR RANGE WAS FLASHING I PULLED OVER TO RE-FUEL AT A LOCAL GAS STATION. AFTER PURCHASING GAS I RETURNED TO THE CAR, STARTED IT UP, AND THE FLASHING PRNDS CONDITION PERSISTED. WHEN I ENGAGED REVERSE TO EXIT THE GAS PUMP AREA THE CAR VERY SUDDENLY LUNGED BACKWARDS WITH SUCH TREMENDOUS FORCE THAT THE VEHICLE BREAK

[PROPOSED] THIRD AMENDED CLASS ACTION COMPLAINT

Exhibit 1

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

SYSTEM COULD NOT CONTAIN THE JOLTING FORCE OF THE BACKWARDS MOVEMENT.  IF ANYONE HAD BEEN STANDING BEHIND ME......THEY WOULD HAVE BEEN VERY SERIOUSLY INJURED OR KILLED.  I HAVE MADE EFFORTS TO CONTACT THE VEHICLE MANUFACTURER (AUDI OF AMERICA) AND THEY FAIL TO ACKNOWLEDGE THIS VERY SERIOUS SAFETY ISSUE.  THIS IS SIMPLY UNACCEPTABLE....  ESPECIALLY IN LIGHT OF THE FACT THAT THE COMPANY HAS FULL KNOWLEDGE OF THIS DEFECTIVE AND THREATENING VEHICLE CONDITION.  THERE ARE MANY OTHER AUDI A4 OWNERS THAT HAVE REPORTED THIS PROBLEM, AND IT IS WELL DOCUMENTED ON AUDI FORUMS ON THE INTERNET.  THE HEART OF MY CONCERN: INSTEAD OF VOLUNTEERING TO REPAIR THIS SERIOUS SAFETY HAZARD, AUDI OF AMERICA HAS ADVISED THAT I NEED TO HAVE THE TRANSMISSION CONTROL MODULE REPLACED AT A PERSONAL COST TO ME OF APPROXIMATELY $3,000.00, WHICH I FIND APPALLING.  THE CAR CONTINUES TO EXHIBIT THIS DRIVING CONDITION, AND LUNGING REVERSE CONDITION CAN BE REPLICATED.  I WOULD LIKE THE OPPORTUNITY TO CALL THIS TO THE ATTENTION OF THE NHTSA FOR REVIEW BEFORE SOMEONE IS SERIOUSLY HURT OR KILLED.  I WOULD VERY MUCH APPRECIATE THE OPPORTUNITY TO ELEVATE MY CONCERN ASAP.  *TR

- 2004 AUDI A4 CVT TRANSMISSION LURCHING, ROUGH SHIFTING, AND EVENTUAL FAILURE OF TRANSMISSION PREDICTED BY MECHANIC, REQUIRING SIGNIFICANT COSTLY REPAIRS (THOUSANDS OF DOLLARS).  FIRST OWNER OF THE VEHICLE, WHICH WAS WELL MAINTAINED.  I AM TOLD THIS IS A "COMMON COMPLAINT/PROBLEM" WITH AUDI'S.  INTERNET SEARCH YIELDS MANY SIMILAR COMPLAINTS ON CVT TRANSMISSIONS.  CALLED AUDI CUSTOMER SERVICE AND THEY ARE MUTE ON CVT TRANSMISSIONS AS AN ISSUE!  DEFECTIVE CVT TRANSMISSIONS SHOULD BE RECALLED AND REPAIRED BY AUDI, NOT BY CONSUMERS.  PRESENT MECHANIC CONTACTED OTHER MECHANICS AND, I AM TOLD THAT THIS IS A KNOWN ISSUE AMONGST MECHANICS? WHY NO RECALL.  *TR

- AUDI A4 ACCELERATES AND DECELERATES AT WILL.  DOES NOT GO INTO REVERSE GEAR ALL THE TIME.  THEN CAR MUST BE TURNED OFF AND ON TO GET IT INTO REVERSE GEAR.  ENGINE RACES UPON

[PROPOSED] THIRD AMENDED CLASS ACTION COMPLAINT

Exhibit 1

ACCELERATION, OR DOWNSHIFTS AT HIGHWAY SPEEDS INTO LOW GEAR CAUSING LOSS OF SPEED. COMPLETELY UNPREDICTABLE. UNSAFE AT ANY SPEED. MY PEACE OF MIND IS SHATTERED. CAR AT DEALERSHIP NOW FOR REPAIR WHICH IS SUPPOSED TO COST $1500. THE INTEGRITY OF THE AUTO IS SUBSTANTIALLY IMPAIRED. *TR

- I HAVE A 2003 A4 CONVERTIBLE AUDI. I HAVE BEEN RESEARCHING PROBLEMS I HAVE BEEN EXPERIENCING, AND HAVE FOUND THAT MANY PEOPLE ARE HAVING THE SAME TRANSMISSION ISSUES. THE PROBLEM IS IN THE TRANSMISSION CONTROL UNIT. THE RANGE SWITCH TELLING THE TRANSMISSION WHICH GEAR TO GO INTO GOES OUT. THE DANGEROUS SYMPTOMS INCLUDE AN INABILITY TO GO INTO REVERSE, THE CAR NOT ACCELERATING WHEN THE GAS IS PRESSED AND THEN LUNGING FORWARD. WHEN THE CAR SLOWS TO A STOP, IT OFTEN DOESN'T SHIFT DOWN AND THE CAR LUNGES FORWARD BEFORE KILLING THE ENGINE. THERE HAVE BEEN NUMEROUS REPORTS OF THIS PROBLEM, AND AUDI HAS BEEN UNWILLING TO ADMIT FAULT IN THE MANUFACTURING, AND/OR PROVIDE A SOLUTION. THE FIX HAS COME AT A COSTLY $8K NEW TRANSMISSION. *TR

- I HAVE A 2003 AUDI A4 3.0 CABRIOLET WITH 38,000 MILES ON IT. THE GEAR DISPLAY BEGAN TO BLINK FREQUENTLY AND THE MANUAL SHIFTING FUNCTIONALITY WOULD NOT WORK. ADDITIONALLY, THE TRANSMISSION WOULD NOT ENGAGE WHILE IN REVERSE ON SEVERAL OCCASIONS. THE DEALERSHIP INFORMED ME THAT THE TRANSMISSION CONTROL MODULE (TCM) NEEDED TO BE REPLACED AT A COST OF $2,400. AFTER RESEARCHING, I HAVE SEEN MANY SIMILAR COMPLAINTS AND FEEL THIS MAY BE DUE TO A MANUFACTURING DEFECT, GIVEN LOW RELATIVE MILES ON THE VEHICLE. *TR

- MY [2004 AUDI A4 CABRIOLET] INTERMITTENTLY DOES NOT MOVE WHEN THE VEHICLE IS PUT IN DRIVE. THIS HAS ONLY HAPPENED SO FAR WHEN THE ENGINE IS COLD. IT HAPPENED TO ME YESTERDAY AS I WAS TRYING TO PULL OUT INTO AN INTERSECTION AND THE CAR BEHIND ME ALMOST HIT ME BECAUSE IT LOOKED LIKE I SHOULD BE MOVING. I HAVE A CVT TRANSMISSION.

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

[PROPOSED] THIRD AMENDED CLASS ACTION COMPLAINT

Exhibit 1

- OWN 2002 AUDI A6 3.0 LITER SEDAN. MODULE(COMPUTER) REPLACED AND COMPLAINED OF TRANSMISSION NOT WORKING PROPERLY. BROUGHT AUTO BACK TO DEALER AND AFTER CHECKING THE TRANSMISSION FOUND NOTHING WRONG. TRANSMISSION STILL NOT WORKING PROPERLY. WHEN PUT IN DRIVE AUTO DOESN'T MOVE FORWARD. HAVE TO PLAY AROUND WITH LEVER FROM REVERSE TO DRIVE TO ENGAGE THE TRANSMISSION. WHEN IT MOVES FORWARD IT LUNGES NOT SMOOTHLY. NOT SAFE DRIVING. *TR

Internet Postings:

- Based on my experience, get ready for more trouble. I have a 2002 A4, CVT Transmission with 89K miles and am putting in tranmission #3. The car has trashed two transmissions already and Audi pleads ignorance and acts as if they have no responsibility for manufacturing a faulty system. I have talked to literally 25 to 30 transmission people around the nation and that transmission has more problems than you can imagine. I have been looking for a rebuilt, used, or any other kind and they are next to impossible to find unless you pay over $6,000 to Audi. My advice is either make sure you have an extended warranty or get rid of the car as fast as you can.

- I have a 2003 A4 Turbo that is just 3 months past warranty and only has 38700 miles on it and the transmission just shut down. The car would start and go into gear but would not move. I had it towed to dealership where I get all my checkups and maintance work and they are saying it needs a new gearbox and cooling line (basically a whole new transmission installed). The quote to fix is $7200. I still owe $7k on the car and I am freaking out. Everyone I have spoken to local mechanics and forum sites all say that there is a HUGE problem with Audi A4 and some Cabrio's starting with 2002 and older due to CVT gearbox problems b/c the cars are so complicated and run by computers they are extremely expensive to fix. The cars are giving out under 50k miles and after warranties are expired. I have also read a ton of customer issues regarding sludge in oil lines not sure if this is related but seems to also be a problem on Audi A4's. I noticed a recall for 2003 A4 fuel systems:fuel pumps as well. I plan on not letting this go and will keep at it till they at least pay for the parts, etc. This is NOT RIGHT! They are selling expensive faulty vehicles.

- Have an '03 A4 we bought as a demo. We have had a multitude of problems over the years since we bought it. None have been too serious as to have us go running from it. It is my wife's car and she loves the little thing. I am now 2 months outside of

Exhibit 1

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

manufacturer warrenty and currently with no warranty. Within warranty, one of my complaints was that the tranny felt like it was slipping. They couldn't duplicate. For long time prior to last service under warranty, there was a winding noise when releasing the accelerator. Audi did not say anyting to be during last visit. Outside of warranty, hear another noise and take it to independant service shop. They say I have tranny problems. I call Audi and then take it to the dealership. Dealership says that tranny must be replaced, cannot be rebuilt. Audi tells dealership they will cover 50%. The cost of this job in total is $6,800. They expect me to pay the other $3,400. I will be talking with Audi about this tomorrow morning. I AM NOT HAPPY!

- wats wrong with audi a4 1.8t(2003) cvt.. ,my gearbox is not working functionly, sometime i cant shift to reverse, i mean,,the reverse shift does not work sometimes. and sometimes the shift plane just disappear from the deshboard. and i hv been told to replace a new transmission computer... is there anyone hv this problem b4?? thanks a lot..

- Hi everyone, I would like to point that out. It seems the story about Audi CVT transmission problem is true. I suffer from it and I have to pay $9,000 to fix it include parts and labin in a dealership. My story was before the transmission go out. It has flashing light on the dash board which incident what gear you are in. When that happened, the gear wouldn't engage. I turn off the car and start again. The flashing light will go away and the car will drive. Until 2 weeks later, I was in San Francisco Chinatown at night. It was driving fine until I drove onto a steep uphill and stopped at the Red light. And the Transmission stop working and I started sliding backward. And I have to tow it to a dealership which that is the only place I could think of. And at the end I have to spend $9000 to get a remanufacture CVT Transmission installed. [¶] My car is 2003 A4 1.8T with 53000 miles on the car. [¶] Later I found that even the extended warranty company won't even cover CVT Transmission. [¶] I encourage all the Audi owners who have the CVT transmission problem post on this threat. I am trying to get Audi America attention to extend their CVT warranty on their vehicles and possibly to reimburse our maintenance cost.

- My 2003 Audi A4 had a CVT transmission problem before it reach 43, 000 miles. I was on a busy street and my Audi just shut down and stop right after I made a right turn into a shopping plaza. I did not even step on break or change the shift to park yet and it just totally shut down on the middle of way. I am very grateful of being lucky that I wasn't on a freeway and did not get into any car accident. [¶] However, I really did not expect this could happen to me at this time because I do expect a lot more on

Exhibit 1

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

my favorite car, Audi A4.  I always take it to dealership for any types of minor or major services or maintenance in the past 5 years.  I thought I could drive this car for at least 10 more years and never thought it would just stop there.  [¶]  I am very upset to realize that my best option was to pay 50% of the repairing cost at the dealership cause I believe there is a major defect on 2003 Audi A4's CVT transmission.  This type of hazard could be very dangerous to anyone who drives this car.  Even though I paid for total around $1500 to this incident, I still can't agree this is a fair solution since it is indeed a serious defect on the transmission when this car was built.  I really want Audi, the company can take care of this issue seriously and take further step on recall . . . .

- i also own a4 1.8t... and also have a same cvt gear box problem.. it seems like audi is offering everybody with 50% cover for the fix.  since i bought the veichle in 04 i started to have cvt problem.  My warrenty expried couple month ago...  what's interesting is that i took the car in the dealer shop for 8....freking eight times for the same problem but eveytime i brought in the car they just did patch job and gave me back the car as it was before...  after about six attempts i gave up and was just planning to get rid of it after few more years of my stay in CA, but it broke down on the highway!!!!  my tranny just failed on the busy 5hwy...  luckly i was be able to get off the highway before car stopped completely..  had two of my friends in the car and i was extreamly sorry for them..  of course i was furious and i brought it back to the dealer ship..  more crazy thing was that it only had been a month since i brough it in to the dealership to fix the freakin Cvt...  they apolized and they told me that they will fix it for me...  after waiting for about 10 days..  they called me and said..  eventhough they have changed the moduel thing(dont know what it is exactly) they still can not find out what is wrong with the car! and asked me if it was okay for them to take the car aprat...!!  service maneger knew I brought back the car in for the same reason mutiple of times..  and he said he will fight for me so i could get the car fixed for free, BUT! there is a possibilty that i will lose and have to pay for the whole! cost! arrange about 2500-5000 dollers...  I felt very disrespected and argued why do I have to gamble on this....  after couple days of arguing..  the sales maneger called me and told me that they came up with the brillent idea! IF! I just trade in the car and get a new audi from them they! will cover the cost of repair! --; or they will just cover the 50% of the cost...  how is this a great idea or a deal?  Nonetheless, i was exausted from arguing with these people so i went down to the sales department in hopes of finally getting rid of this problem..  but they qouoted me New audi TT for $850 a

[PROPOSED] THIRD AMENDED CLASS ACTION COMPLAINT

Exhibit 1

> month -_-;;...  I guess they knew i needed a car.. so they were just going to make more money out of me! . . . .

60.     The CVT Transmission defect poses an unreasonable safety risk for Class Members, as well as the drivers, passengers, and pedestrians sharing the road with Class Vehicles.  A vehicle's ability to have forward propulsion, not to stall, not to surge, to go into reverse, and the ability of a vehicle's transmission to perform properly are each critical to the safe operation of a motor vehicle.  A defect that causes one or more of these negative characteristics clearly poses a safety hazard to the general public, and increases the risk of automobile accidents and moving-violation penalties.

61.     Upon information and belief, the root cause of premature CVT Transmission failure is that the CVT Transmission has multiple design, manufacturing, and assembly defects, including but not limited to defects relating to the Transmission Control Module ("TCM"), and defects relating to the Automatic Transmission Fluid Pump Bushing.  These problems are systemic, result in premature CVT Transmission failure, cause consumers to incur unreasonable and unexpected expense, and pose a safety hazard.

**Volkswagen Has Exclusive Knowledge Of The CVT Transmission Defect**

62.     Volkswagen had superior and exclusive knowledge of the CVT Transmission defect, and knew that the defect was not known or reasonably discoverable by Plaintiffs and Class Members prior to their purchase or lease of the Class Vehicles.

63.     Only Volkswagen had access to information about the defects of the CVT Transmissions of the Class Vehicles through its dealerships, pre-release testing data, warranty data, customer complaint data, and replacement part sales data, among other internal sources of aggregate information about the problem.

64.     The existence of the CVT Transmission defects is a fact that would be considered material by a reasonable consumer deciding whether to purchase

[PROPOSED] THIRD AMENDED CLASS ACTION COMPLAINT

Exhibit 1

or lease a vehicle that was equipped with a CVT transmission. Had Plaintiffs and other Class Members known that the Class Vehicles were equipped with defective CVT Transmissions, they would not have purchased the Class Vehicles equipped with the CVT transmissions or would have paid less for them.

65.     Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's transmission is safe, will function in a manner that will not pose a safety hazard, and is free from defects. Plaintiffs and Class Members further expect and assume that Volkswagen will not sell or lease vehicles with known safety defects, such as the CVT Transmission Defect, and will disclose any such defects to its consumers when it learns of them. They do not expect Volkswagen to fail to disclose the CVT Transmission Defect to them, to continually deny the defect, and to charge them thousands of dollars to repair defective CVT Transmissions.

**Volkswagen Has Actively Concealed The CVT Transmission Defect**

66.     While Volkswagen has been fully aware of the CVT Transmission Defect in the Class Vehicles, it has actively concealed the existence and nature of the defect from Plaintiffs and Class Members at the time of purchase, lease or repair and thereafter. Specifically, Volkswagen has failed to disclose or actively concealed at and after the time of purchase, lease, or repair:

(a)     any and all known material defects or material nonconformity of the Class Vehicles, including the defects relating to the CVT Transmissions;

(b)     that the Class Vehicles, including their CVT Transmissions, were not in good in working order, were defective, and were not fit for their intended purposes; and

(c)     that the Class Vehicles and their CVT Transmissions were defective, despite the fact that Volkswagen learned of such defects through consumer complaints, as well as through

Exhibit 1

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

other internal sources, as early as 2002, if not before.

67. Volkswagen has caused Plaintiffs and Members of the Class to expend money at its dealerships to repair or replace the Class Vehicles' CVT Transmission, despite Defendant's knowledge of the defect.

68. Where Defendant replaced the Class Vehicles' CVT Transmission pursuant to warranty provisions, Defendant utilized equally defective CVT Transmission and transmission parts such that the defect was not corrected even though Defendant informed consumers that the defect was corrected.

69. When consumers present the Class Vehicles to an authorized Volkswagen dealer for repair of the CVT Transmission, consumers are typically told that they must pay for the repair. The cost of repairing the CVT Transmission ranges from approximately hundreds to thousands of dollars.

70. To this day, Volkswagen still has not notified Plaintiffs and the Class Members that the Class Vehicles suffer from a systemic defect that causes the CVT Transmission to malfunction. Volkswagen has caused Plaintiffs and Class Members to expend money at its dealerships to diagnose, repair or replace the Class Vehicles' CVT Transmissions, despite Volkswagen's knowledge of the CVT Transmission defect.

**VIOLATION OF CALIFORNIA SECRET WARRANTY LAW**

71. Volkswagen has violated, and continues to violate, California Civil Code § 1795.90 *et seq.* (the "California Secret Warranty Law"). The California Secret Warranty Law was enacted to abolish "secret" warranties. The term "secret warranty" is used to describe the practice by which an automaker establishes a policy to pay for repair of a defect without making the defect or the policy known to the public at large. A secret warranty is usually created when the automaker realizes that a large number of its customers are experiencing a defect not covered by a factory warranty, and decides to offer warranty coverage to individual customers only if, for example, the customer complains about the

Strategic Legal Practices, APC
1875 Century Park East, Suite 700, Los Angeles, CA 90067

problem first.  The warranty is considered "secret" because all owners are not notified of it.  Instead, the automaker usually issues a service bulletin to its regional offices and/or dealers on how to deal with the defect, although a service bulletin or other formal document is not necessary to create a secret warranty. Because owners are kept in the dark about the cost-free repair, the automaker only has to reimburse those consumers who complain loudly enough; the quiet consumer pays to fix the defect himself or herself.

72.    Volkswagen is a "manufacturer" as that term is defined by § 1795.50 of the California Secret Warranty Law.  § 1795.2 of the California Secret Warranty Law imposes several duties on auto manufacturers like Volkswagen, each of which is designed to do away with secret warranties.

73.    Plaintiffs and members of the proposed Class are consumers as that term is defined by § 1795.90(a) of the California Secret Warranty Law.  The California Secret Warranty law requires automakers to notify consumers, by first-class mail, within 90 days of adoption, whenever they enact "any program or policy that expands or extends the consumer's warranty beyond its stated limit or under which [the] manufacturer offers to pay for all or any part of the cost of repairing, or to reimburse consumers for all or any part of the cost of repairing, any condition that may substantially effect vehicle durability, reliability, or performance . . . ."

74.    The California Secret Warranty Law also requires automakers to provide the New Motor Vehicle Board with a copy of the notice described above, so the public can view, inspect, or copy that notice.

75.    Additionally, the California Secret Warranty Law requires automakers to advise their dealers, in writing, of the terms and conditions of any warranty extension, adjustment, or reimbursement program.

76.    The California Secret Warranty Law also requires an automaker to "implement procedures to assure reimbursement of each consumer eligible under

Exhibit 1

an adjustment program who incurs expenses for repair of a condition subject to the program prior to acquiring knowledge of the program."

77.     Volkswagen has issued a TSB to its dealers that describe the problem with the CVT Transmissions installed in the Class Vehicles.  The TSB provides several procedures for diagnosing and repairing the CVT Transmission, and even admits that a new "improved AFT pump [is] incorporated in the valve body" of the Class Vehicles.

78.     Plaintiffs are informed and believe and based thereon allege that Volkswagen has extended its warranty by employing a secret policy to reimburse or offer free CVT transmission replacement and/or related repairs to those consumers who complain loudly enough, even to those customers whose vehicle experienced the CVT Transmission Defect and/or any CVT transmission repairs outside of Volkswagen's 4-year/50,000-mile New Car Warranty.  The decision to provide reimbursement or offer free transmission replacement and/or transmission related repairs is not done on an ad hoc basis.  Rather, it is made pursuant to a systematic policy—communicated to, *inter alia*, regional offices, dealers, and Volkswagen's customer care personnel-to pacify the most vocal consumers so as to preserve Defendant's reputation.  Upon information and belief, the code names for this policy are "good-will adjustments" or "policy adjustments."

79.     Again, reimbursement for CVT Transmission and/or related repairs and replacements, when those repairs and replacements fall outside of the Class Vehicles' LNVW, is not covered by Volkswagen under warranty.  Thus, by extending its warranties to cover CVT Transmission repairs and replacement, Volkswagen has "expand[ed] or extend[ed] the consumer's warranty beyond its stated limit."  Thus, this CVT Transmission repair and replacement program constitutes an adjustment program under the Secret Warranty Law and constitutes an offer to pay for or to reimburse consumers for the cost of repairing

Exhibit 1

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

1  a condition that substantially affects vehicle durability, reliability, or

2  performance.

3        80.    Additionally, and more importantly, the repairs outlined in

4  Defendant's 2009 TSB are intended to address "substantially affect the vehicle

5  durability, reliability, or performance."  Therefore, these cost-free repairs are

6  considered "adjustment programs" within the meaning of the California Secret

7  Warranty Law for this reason as well and as a result all class members should

8  have been informed about this repair.

9        81.    As a result of the foregoing, Defendant is obligated to comply with

10  the provisions of the California Secret Warranty Law with respect to its CVT

11  Transmission repair and replacement program, including its 2009 secret TSB

12  program.  It has not done so.

13        82.    Specifically, Defendant did not notify Plaintiffs, or any other owner

14  or lessee of Class Vehicles of their right to have all or part of the repairs to their

15  CVT Transmissions paid for by Defendant.

16        83.    Defendant has also refused to extend its CVT Transmission repair

17  and replacement program to all owners and lessees of Class Vehicles.

18        84.    Additionally, Defendant has refused to reimburse all consumers who

19  have paid to repair or replace CVT Transmissions installed in Class Vehicles,

20  and has refused to reimburse said consumers for any consequential damages

21  arising from the same.

22        85.    Upon information and belief, Defendant did not comply with the

23  dealer-notification provisions of the California Secret Warranty Law.

24        86.    Upon information and belief, Defendant has also failed to comply

25  with the New Motor Vehicle Board notification procedures.

26              **TOLLING OF THE STATUTE OF LIMITATIONS**

27        87.    Because the defects in the design or manufacturer of the Class

28  Vehicles and their CVT Transmissions cannot be detected until a defect

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

Exhibit 1

manifests itself, Plaintiffs and the Class Members were not reasonably able to discover the problem until after purchasing or leasing the Class Vehicles, despite their exercise of due diligence.

88.    Plaintiffs and the Class Members had no realistic ability to discern that the CVT Transmissions were defective until the CVT Transmissions prematurely failed.  Therefore, the discovery rule is applicable to the claims asserted by Plaintiffs and the Class Members.

89.    Plaintiffs are informed and believe and based thereon allege that Volkswagen has known of CVT Transmission defect at least since 2002, if not earlier, and has concealed from or failed to alert owners and lessees of the Class Vehicles of the defective nature of their CVT Transmissions.

90.    Any applicable statute of limitation has therefore been tolled by Volkswagen's knowledge, active concealment, and denial of the facts alleged herein.  Volkswagen is further estopped from relying on any statute of limitation because of its concealment of the defective nature of the Class Vehicles and their CVT Transmissions.

### CLASS ACTION ALLEGATIONS

91.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all other residents of California and the Unites States similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

92.    The Class and Sub-Class are defined as:

Class I:  All Persons in the State of California who purchased or leased Class Vehicles ("California Class").

Class II:   All Persons in the United States who purchased or leased Class Vehicles ("Nationwide Class").

Exhibit 1

93.     Excluded From Class I and Class II:  (1) Excluded from the Class are (a) anyone claiming personal injury, property damage and/or subrogation, (b) all Judges who have presided over the Actions and their spouses, (c) all current employees, officers, directors, agents and representatives of Defendants, and their family members, (d) any affiliate, parent or subsidiary of Defendants and any entity in which Defendants have a controlling interest; (e) anyone acting as a used car dealer; (f) anyone who purchased a Settlement Class Vehicle for the purpose of resale; (g) anyone who purchased a Settlement Class Vehicle with salvaged title and/or any insurance company who acquired a Settlement Class Vehicle as a result of a total loss; (h) any insurer of a Settlement Class Vehicle; (i) any owners or lessees of Settlement Class Vehicles that were not manufactured for export specifically into the United States of America and were not imported or distributed by Volkswagen Group of America, Inc.; and (j) any Settlement Class Member that files a timely and proper Request for Exclusion from the Settlement Class.

94.     Numerosity:  Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

95.     Typicality:  The claims of representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class Members, purchased and leased a Class Vehicle designed, manufactured, and distributed by Volkswagen, and equipped with a CVT Transmission.  The representative Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that they have incurred or will incur the cost of repairing or

[PROPOSED] THIRD AMENDED CLASS ACTION COMPLAINT

Exhibit 1

1  replacing the defective CVT Transmission.  Furthermore, the factual bases of

2  Volkswagen's misconduct are common to all Class Members and represent a

3  common thread resulting in injury to all Class Members.

4       96.   <u>Commonality</u>:  There are numerous questions of law and fact

5  common to Plaintiffs and the Class that predominate over any question affecting

6  only individual Class Members.  These common legal and factual issues include

7  the following:

8       (a)   Whether VW Vehicles suffer from defects relating to the CVT

9             Transmission;

10      (b)   Whether the defects relating to the CVT Transmission

11            constitute an unreasonable safety risk;

12      (c)   Whether Defendant knows about the defects relating to the

13            CVT Transmission and, if so, how long Defendant has known

14            of the defect;

15      (d)   Whether the defective nature of the CVT Transmission

16            constitutes a material fact;

17      (e)   Whether Defendant has a duty to disclose the defective nature

18            of the CVT Transmission to Plaintiffs and Class Members;

19      (f)   Whether Plaintiffs and the other Class Members are entitled

20            to equitable relief, including but not limited to a preliminary

21            and/or permanent injunction;

22      (g)   Whether Defendant knew or reasonably should have known of

23            the defects relating to the CVT Transmission before it sold

24            and leased Class Vehicles to Class Members;

25      (h)   Whether Defendant should be declared financially responsible

26            for notifying all Class Members of the problems with the

27            Class Vehicles and for the costs and expenses of repairing and

28            replacing the defective CVT Transmissions;

Exhibit 1

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

(i) Whether Defendant violated California's Secret Warranty Law;

(j) Whether Defendant is obligated to inform California Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective CVT Transmissions;

(k) Whether Defendant breached the implied warranty of merchantability pursuant to the Song-Beverly Act; and

(l) Whether Defendant breached the Class Vehicles' express warranties.

97. <u>Adequate Representation</u>:  Plaintiffs will fairly and adequately protect the interests of the Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously

98. <u>Predominance and Superiority</u>:  Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

# FIRST CAUSE OF ACTION

## (Violation of California's Consumer Legal Remedies Act,

## California Civil Code § 1750, *et seq.*)

99.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

100.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the California Class against all Defendants.

101.   Defendant is a "person" as defined by California Civil Code § 1761(c).

102.   Plaintiffs and Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

103.   By failing to disclose and concealing the defective nature of the CVT Transmissions from Plaintiffs and prospective Class Members, Defendant violated California Civil Code § 1770(a), as it represented that its Class Vehicles and their CVT Transmissions had characteristics and benefits that they do not have, and represented that its Class Vehicles and their CVT Transmissions were of a particular standard, quality, or grade when they were of another.  *See* Cal. Civ. Code §§ 1770(a)(5) & (7).

104.   Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

105.   Defendant knew that its Class Vehicles and their CVT Transmissions suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

106.   Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the CVT Transmissions and/or the associated

Exhibit 1

repair costs because:

      (a)   Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVT Transmissions;

      (b)   Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their CVT Transmissions had a dangerous safety defect until manifestation of failure; and

      (c)   Defendant knew that Plaintiffs and the Class Members could not reasonably have been expected to learn or discover the safety defect.

107.   In failing to disclose the defective nature of the CVT Transmissions, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

108.   The facts concealed or not disclosed by Defendant to Plaintiffs and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles or pay a lesser price.  Had Plaintiffs and other Class Members known that the Class Vehicles' CVT Transmissions were defective, they would not have purchased the Class Vehicles or would have paid less for them.

109.   Plaintiffs and the Class Members are reasonable consumers who do not expect the transmissions installed in their vehicles to fail prematurely.  This is the reasonable and objective consumer expectation relating to vehicle transmissions.

110.   As a result of Defendant's conduct, Plaintiffs and Class Members have been harmed and have suffered actual damages in that the Class Vehicles have experienced and will continue to experience premature CVT Transmission failures.

Exhibit 1

111.   As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

112.   Plaintiffs and the Class are entitled to equitable relief.

113.   Plaintiffs have provided all Defendants with notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a).  All Defendants failed to provide the appropriate relief for its violation of the CLRA within 30 days of the date of the notification letter.

114.   Thus, Plaintiffs, pursuant to § 1782(a), also seek actual, statutory, and punitive damages in addition to equitable relief.

## SECOND CAUSE OF ACTION

**(Violation of California's Unfair Business Practices Act,**
**California Business & Professions Code § 17200, *et seq*. Pursuant to**
**California's Secret Warranty Law, California Civil Code § 1795.90, *et seq*.)**

115.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

116.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the California Class against all Defendants.

117.   By committing the acts and practices alleged herein, Defendant violated the Secret Warranty Law, and by doing so, has engaged in deceptive, unfair and unlawful business practices in violation of the Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, *et seq.*

118.   Defendant's violation of the Secret Warranty Law (hence the UCL) continues to this day.  As a direct and proximate result of Defendant's violations of the Secret Warranty Law, hence the UCL, Plaintiffs and prospective Class Members have paid to repair, replace, and/or diagnose the defective nature of the CVT Transmissions installed on Class Vehicles.

119.   Pursuant to § 17203 of the UCL, Plaintiffs and Class Members seek

Exhibit 1

an order of this Court requiring Defendant to comply with the terms of the California Secret Warranty Law by:  (a) notifying Class Members of the secret CVT Transmission repair and replacement program; (b) extending to all Class Members the repair and/or replacement program made available to some Class Members relating to the defects of the CVT Transmissions installed on Class Vehicles, as required by the Secret Warranty Law; (c) identifying and reimbursing all Class Members who have paid for any CVT Transmission repairs and replacements, as required by the Secret Warranty Law; (d) notifying California dealers of the facts underlying the CVT Transmission defect and the terms of its clandestine policy to repair or replace defective CVT Transmissions, as required by the Secret Warranty Law; and (e) notifying the California New Motor Vehicle Board of the secret CVT Transmission repair or replacement program as required by the Secret Warranty Law.

120.   Plaintiffs and Class Members also seek an order (i) enjoining Defendant from failing and refusing to make full restitution of all moneys wrongfully obtained as a result of its violations of the California Secret Warranty Law; and (ii) disgorging to Plaintiffs and Class Members all ill-gotten revenues and/or profits earned as a result of Defendant's violation of the California Secret Warranty Law, plus an award of attorneys' fees and costs.  This is because Defendant profited from its sale of replacement CVT Transmissions and CVT Transmission components, to mechanics and dealers because they ultimately replaced or repaired defective CVT Transmissions for consumers.

## THIRD CAUSE OF ACTION

### (Violation of UCL Other Than Violation of

### California's Secret Warranty Law,

### California Business & Professions Code § 17200, *et seq.*)

121.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

122.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of the California Class against all Defendants.

123.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

124.   Plaintiffs and the Class Members are reasonable consumers who do not expect their CVT Transmissions to prematurely fail.

125.   Defendant knew the Class Vehicles and their CVT Transmissions suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

126.   In failing to disclose the defects with the CVT Transmission, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

127.   Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles and their CVT Transmissions:

   (a)   Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVT Transmissions;

   (b)   Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their CVT Transmissions; and

   (c)   Defendant actively concealed the defective nature of the Class Vehicles and their CVT Transmissions from Plaintiffs and the Class.

128.   The facts concealed or not disclosed by Defendant to Plaintiffs and the Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase Class Vehicles. Had Plaintiffs and other Class Members known that the Class Vehicles' CVT

Exhibit 1

Transmissions were defective and posed a safety hazard, then Plaintiffs and the other Class Members would not have purchased Class Vehicles equipped with CVT Transmissions, or would have paid less for them.

129.   Defendant continued to conceal the defective nature of the Class Vehicles and their CVT Transmissions even after Class Members began to report problems.  Indeed, Defendant continues to cover up and conceal the true nature of the problem, even though it is secretly repairing and replacing for free CVT Transmissions and CVT Transmission components for a few Class Members who complain loudly enough.

130.   By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

131.   Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

132.   As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs and the Class have suffered and will continue to suffer actual damages.

133.   Defendant has been unjustly enriched and should be required to make restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.

## FOURTH CAUSE OF ACTION

### (Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act, California Civil Code §§ 1792 and 1791.1, *et seq.*)

134.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

135.   Plaintiffs bring this cause of action against Defendant on behalf of themselves and on behalf of the California Class against all Defendants.

136.   Defendant was at all relevant times the manufacturer, distributor,

Exhibit 1

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

warrantor, and/or seller of the Class Vehicles.  Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased.

137.  Defendant provided Plaintiffs and Class Members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.  However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their CVT Transmissions suffer from a defect and at the time of sale and thereafter were not fit for their particular purpose of providing safe and reliable transportation.

138.  Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, among other things:  (i) a warranty that the Class Vehicles and their CVT Transmissions were manufactured, supplied, distributed, and/or sold by Volkswagen were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their CVT Transmissions would be fit for their intended use while the Class Vehicles were being operated.

139.  Contrary to the applicable implied warranties, the Class Vehicles and their CVT Transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the Class Members with reliable, durable, and safe transportation.  Instead, the Class Vehicles are defective, including but not limited to the defective design and manufacture of their CVT Transmissions.

140.  Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

[PROPOSED] THIRD AMENDED CLASS ACTION COMPLAINT

Exhibit 1

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**FIFTH CAUSE OF ACTION**

**(Breach of Written Warranty Under the**

**Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*)**

141.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

142.   Plaintiffs bring this action on behalf of themselves and on behalf of the Nationwide Class against all Defendants.

143.   Plaintiffs and the other Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

144.   Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

145.   The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

146.   Defendant's express warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

147.   Defendant breached the express warranty by:

    (a)    Extending a 4-year/50,000-mile New Vehicle Limited Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

    (b)    Extending for 7 years or 70,000 miles California Emissions Warranties with the lease or purchase of the Class Vehicles, thereby warranting to repair or replace any emission related parts in the Class Vehicles;

    (c)    Extending a Certified pre-owned Limited Warranty that provides coverage from the Certified pre-owned purchase date for 2 years or up to 50,000 miles, whichever occurs first;

    (d)    Selling and leasing Class Vehicles with CVT transmissions

Exhibit 1

that were defective in material and workmanship, requiring

repair or replacement within the warranty period; and

(e)    Refusing to honor the express warranty by repairing or

replacing, free of charge, the CVT transmission or any of its

component parts and instead, charging for repair and

replacement parts.

148.   Defendant's breach of the express warranty deprived the Plaintiffs and the other Class Members of the benefits of their bargains.

149.   The amount in controversy of the Plaintiffs' individual claims meets or exceeds the sum or value of $25.  In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

150.   Defendant has been afforded a reasonable opportunity to cure its breach of written warranty, including when Plaintiffs and other Class Members brought their vehicles in for diagnoses and repair of the CVT Transmission.

151.   As a direct and proximate result of Defendant's breach of written warranty, Plaintiffs and Class Members sustained damages and other losses in an amount to be determined at trial.  Defendant's conduct damaged Plaintiffs and Class Members who are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

## SIXTH CAUSE OF ACTION

### (Breach of Express Warranty)

152.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

153.   Plaintiffs bring this action on behalf of themselves and on behalf of the nationwide Class against all Defendants.

154.   Defendant provided all purchasers and lessees of the Class Vehicles

Exhibit 1

STRATEGIC LEGAL PRACTICES, APC

1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

1   with the express warranty described herein, which became part of the basis of the

2   bargain.

3        155.   The CVT Transmission and its parts were manufactured and/or

4   installed and/or distributed by Defendant in the Class Vehicles and are covered

5   by the express warranty.

6        156.   Defendant breached the express warranty by:

7            (a)    Extending a warranty to owners or lessees of the Class

8                   Vehicles, thereby warranting to repair or replace any defect in

9                   material or workmanship at no cost to the owner or lessee;

10           (b)    Selling and leasing Class Vehicles with CVT Transmission

11                  that were defective in material and workmanship, requiring

12                  repair or replacement within the warranty period; and

13           (c)    Refusing to honor the express warranty by repairing or

14                  replacing, free of charge, CVT Transmission or any of its

15                  component parts.

16       157.   Plaintiffs (or the prior owners of their Class Vehicles) notified

17   Defendant of the breach within a reasonable time, and/or were not required to do

18   so because affording Defendant a reasonable opportunity to cure its breach of

19   written warranty would have been futile.  Defendant was also on notice of the

20   CVT Transmission defect from the complaints and service requests it received

21   from Class Members, from repairs and/or replacements of the CVT Transmission

22   or a component thereof, and through its own maintenance records.

23       158.   As a direct and proximate cause of Defendants' breach, Plaintiffs

24   and the other Class Members have suffered damages and continue to suffer

25   damages, including economic damages at the point of sale or lease, *i.e.*, the

26   difference between the value of the vehicle as promised and the value of the

27   vehicle as delivered.  Additionally, Plaintiffs and the other Class Members either

28   have incurred or will incur economic damages at the point of repair in the form

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

[PROPOSED] THIRD AMENDED CLASS ACTION COMPLAINT

Exhibit 1

1    of the cost of repair.

2       159.   Plaintiffs and the other Class Members are entitled to legal and

3    equitable relief against Defendant, including damages, consequential damages,

4    specific performance, rescission, attorneys' fees, costs of suit, and other relief as

5    appropriate.

6                          **RELIEF REQUESTED**

7       160.   Plaintiffs, on behalf of themselves, and all others similarly situated,

8    request the Court to enter judgment against Defendant, as follows:

9       (a)   An order certifying the proposed Class and  Sub-Classes,

10             designating Plaintiffs as named representative of the Class,

11             and designating the undersigned as Class Counsel;

12      (b)   A declaration that Defendant is financially responsible for

13             notifying all Class Members about the defective nature of the

14             CVT Transmission;

15      (c)   An order requiring Defendant to comply with the Secret

16             Warranty Law by:  (a) notifying Class Members of the secret

17             CVT Transmission replacement and repair program, including

18             the "improved AFT pump," as required by the California

19             Secret Warranty Law; (b) identifying and reimbursing all

20             Class Members who have paid for CVT Transmission repair

21             or replacement; (c) notifying California dealers of the facts

22             underlying the problems and the terms of Volkswagen's

23             secret CVT Transmission repair and replacement policy; and

24             (d) notifying the California New Motor Vehicle Board of the

25             secret CVT Transmission repair and replacement program as

26             required by the Secret Warranty Law;

27      (d)   An order enjoining Defendant from further deceptive

28             distribution, sales, and lease practices with respect to its Class

Exhibit 1

Strategic Legal Practices, APC
1875 Century Park East, Suite 700, Los Angeles, CA 90067

1    Vehicles, and to remove and replace Plaintiffs and Class
2    Members' CVT Transmissions with a suitable alternative
3    product;

4    (e)   An award to Plaintiffs and the Class of compensatory,
5          exemplary, and statutory damages, including interest, in an
6          amount to be proven at trial;

7    (f)   Any and all remedies provided under the law, including but n
8          not limited California Civil Code section 1794, California
9          Commercial Code, the Magnuson-Moss Act and the Uniform
10         Commercial Code;

11   (g)   A declaration that Defendant must disgorge, for the benefit of
12         the Class, all or part of the ill-gotten profits it received from
13         the sale or lease of its Class Vehicles, or make full restitution
14         to Plaintiffs and Class Members;

15   (h)   An award of attorneys' fees and costs, as allowed by law;

16   (i)   An award of attorneys fees and costs pursuant to California
17         Code of Civil Procedure § 1021.5;

18   (j)   An award of pre-judgment and post-judgment interest, as
19         provided by law;

20   (k)   Leave to amend the Complaint to conform to the evidence
21         produced at trial; and

22   (l)   Such other relief as may be appropriate under the
23         circumstances.

24
25
26
27
28

[PROPOSED] THIRD AMENDED CLASS ACTION COMPLAINT

Exhibit 1

STRATEGIC LEGAL PRACTICES, APC
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STRATEGIC LEGAL PRACTICES, APC**
1875 CENTURY PARK EAST, SUITE 700, LOS ANGELES, CA 90067

## DEMAND FOR JURY TRIAL

161.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.


Dated:  December 21, 2012          Respectfully submitted,

                                   Strategic Legal Practices, APC


                          By: /S/
                                   Payam Shahian

                                   /S/
                                   G. Arthur Meneses (SBN 105260)
                                   AMeneses@InitiativeLegal.com
                                   Initiative Legal Group APC
                                   1800 Century Park East, Mezzanine
                                   Los Angeles, California 90067
                                   Telephone: (310) 556-5637
                                   Facsimile:  (310) 861-9051

                                   Robert Starr
                                   THE LAW OFFICE OF ROBERT STARR
                                   e-mail: starresq@hotmail.com
                                   23277 Ventura Boulevard
                                   Woodland Hills, California, 91364-1002
                                   Telephone: (818) 225-9040
                                   Facsimile: (818) 225-9042

                                   Dara Tabesh
                                   e-mail: DTabesh@hotmail.com
                                   333 First St. Ste. C
                                   San Francisco, CA 94105
                                   Telephone: (415) 503-9164
                                   Facsimile: (515) 651-8639

                                   Attorneys for Plaintiffs

[PROPOSED] THIRD AMENDED CLASS ACTION COMPLAINT

Exhibit 1