|     |     |     |
| --- | --- | --- |
| 1   | Payam Shahian (SBN 228406) | |
|     | Pshahian@slpattorney.com | |
| 2   | Strategic Legal Practices, APC | |
|     | 1875 Century Park East, Suite 700 | |
| 3   | Los Angeles, California 90067 | |
|     | Telephone:  (310) 277-1040 | |
| 4   | Facsimile    (310) 943-3838 | |
| 5   | | |
|     | Attorneys for Plaintiffs | |
| 6   | Anna Sadowska, Yanick Godbout | |
|     | and Tonya DenDekker | |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| ANNA SADOWSKA, YANICK GODBOUT, and TONYA DENDEKKER, individually, and on behalf of a class of similarly situated individuals,<br><br>             Plaintiffs,<br><br>     v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AG, and AUDI AG,,<br><br>             Defendants. | Case No.:  CV11-00665 BRO (AGRx)<br><br>**CLASS ACTION**<br><br>**DECLARATION OF PAYAM SHAHIAN IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR AN AWARD OF ATTORNEY FEES, EXPENSES, COSTS, AND CLASS REPRESENTATIVE INCENTIVE AWARDS**<br><br>Date:    September 23, 2013<br>Time:    10:00 a.m.<br>Place:   Courtroom 14 |

---

DECLARATION OF PAYAM SHAHIAN ISO MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSES, COSTS AND CLASS
REPRESENTATIVE INCENTIVE AWARDS

# DECLARATION OF PAYAM SHAHIAN

I, Payam Shahian, declare:

1. I am an attorney admitted to the Bar of the State of California and the United States District Court, Central District of California. I am a Shareholder of Strategic Legal Practices, APC ("Strategic" or "SLP"), counsel of record for Plaintiffs Anna Sadowska, Yanick Godbout and Tonya DenDekker in the above-captioned matter. My knowledge of the information and events described herein derives from a combination of my personal knowledge and a careful review of the file, relevant court records and communications with co-counsel, and if called as a witness, I could and would competently testify to them. I submit this declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for An Award of Attorneys' Fees, Expenses, Costs and Class Representative Incentive Awards.

## Payam Shahian

2. I graduated *cum laude* from UCLA in 2000 and then attended the University of California, Hastings College of the Law, from which I graduated in 2003.

3. Between 2004 and 2007, I worked at Bowman & Brooke LLP, a national defense firm where I primarily represented Ford Motor Company in over 150 consumer vehicle warranty cases.

4. In 2007, I joined a plaintiff class action firm, and in 2010, I established Strategic Legal Practices, APC. Since 2007, I have represented both consumers and employees in over 50 class action matters. At the present time, in addition to my staff and me, Strategic employs two full-time attorneys and one of-counsel. Our practice mainly focuses on class action consumer fraud and warranty cases, as well as class action wage-and-hour cases.

5. In my career, I have helped to successfully prosecute or resolve many class actions cases and have obtained final approval on behalf of hundreds

Page 1

DECLARATION OF PAYAM SHAHIAN ISO MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSES, COSTS AND CLASS
REPRESENTATIVE INCENTIVE AWARDS

of thousands of consumers and employees.

6. I have successfully certified class actions where certification was contested. In *Keegan et al. v. American Honda Motor Co., Inc.*, 284 F.R.D. 504 (C.D. Cal. June 12, 2012), as one of the lead attorneys in the case, I helped certify a multi-state class of owners and lessees of 2006-2007 Honda Civics and 2006-2008 Honda Civic Hybrids with defective rear suspensions. In addition to certifying various causes of action, *Keegan* was the first case in which an implied warranty cause of action under the Song-Beverly Act was certified.

7. I also have experience in appellate practice, allowing me to fully litigate any consumer class action while preserving the continuity that is established at the pre-filing stage. *See Aberdeen v. Toyota Motor Sales, U.S.A., Inc.*, 422 Fed. Appx. 617 (9th Cir. 2011) (affirming in part and reversing in part district court's denial of class certification where plaintiff alleged Toyota failed to disclose the real-world fuel economy of the Prius); *Price v. Automobile Club of Southern California*, 2010 WL 2028529 (2010) (ruling that the lower court erred when sustaining defendant's demurrer without leave to amend in putative class action alleging violations of Labor Code statutes and unfair competition); *Khani v. Ford Motor Company*, 2013 Cal. App. 2,WL 1768661 (April 2, 2013) (reversing trial court's order, which had disqualified Payam Shahian and his law firm, Strategic Legal Practices, APC, from representing Mr. Khani in a consumer warranty case because Shahian formerly represented Ford).

8. I have also been part of and helped achieve final approval on behalf of hundreds of thousands of class members. *See, e.g.*, *In re Mini Windshield Actions* (*Ehrlich v. BMW*), Case No. 10-01151, Dkt. No. 94 (C.D. Cal. 2012) (final approval of nationwide class action settlement on behalf of consumers of MINI Coopers for alleged windshield defects); *Marsikian et al. v. Mercedes-Benz USA, LLC*, Case No. 08-04876, Dkt. No. 125 (C.D. Cal. 2010) (nationwide class action settlement involving over a 100,000 vehicles with an alleged water

Page 2

DECLARATION OF PAYAM SHAHIAN ISO MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSES, COSTS AND CLASS
REPRESENTATIVE INCENTIVE AWARDS

leak defect); *Munoz v. J.C. Penney Corp., Inc.*, Case No. 09-00833, Dkt. No. 93 (C.D. Cal. 2010) (settlement on behalf of over 70,000 non-exempt former and current retail store employees for several wage and hour claims, including the failure to pay premiums for missed meal and rest breaks); *Wu v. California State Auto. Ass'n* (Alameda Super. Ct. No. RG08-402621) (settlement on behalf of hourly sales representatives and life insurance specialists for unreimbursed business expense claims); *Taylor v. Mobile Mini, Inc.* (San Bernardino Super. Ct. No. CIVSS705070) (settlement on behalf of current or former non-exempt truck drivers of several wage and hour claims, including meal and rest break claims); *Bejarano v. Amerisave Mortgage Corp.* (E.D. Cal. No. 08-00599) (settlement of several wage and hour claims).

## Overview of the Litigation

9. On January 21, 2011, Anna Sadowska brought this class action against Defendants on behalf of California owners and lessees of 2002, 2003 and 2004 model year Audi A4 vehicles (including Cabriolets) and Audi A6 vehicles, originally equipped with a factory-installed CVT Transmission, imported and distributed by Defendant Volkswagen Group of America.[1] (Docket No. 1.)

10. On May 27, 2011, Sadowska filed a First Amended Complaint to, among other things, add Yanick Godbout as a Plaintiff and to add a nationwide class of all owners and lessees of 2002, 2003 and 2004 model year Audi A4 vehicles (including Cabriolets) and Audi A6 vehicles, originally equipped with a factory-installed CVT Transmission, imported and distributed by Defendant VWGoA. (Docket No. 14.) During the course of this litigation, Plaintiffs' counsel and VWGoA's counsel also discussed potential problems with the Transmission Control Modules of 2005 and 2006 model year vehicles. After

---

[1] Plaintiffs initially sued Volkswagen Group of America, Inc. ("VWGoA"). Plaintiffs also sued Audi AG and Volkswagen AG ("VWAG") in Germany through the Hague Convention. Collectively, all Defendants are referred to as "Defendants."

Page 3

conducting both formal and informal discovery concerning those vehicles, Plaintiffs filed a Second Amended Complaint on November 1, 2012, to add Tonya DenDekker as a Plaintiff and to allege a transmission defect on behalf of those vehicles.  (Docket No. 56.)

11. Plaintiffs' operative Third Amended Complaint, filed on December 21, 2012, asserts on behalf of the California consumers violations of the following causes of action: (1) Violations of California Consumer Legal Remedies Act; (2) Violations of Unfair Business Practices Act – Secret Warranty; (3) Violations of Unfair Business Practices Act; and (4) Breach of Implied Warranty pursuant to Song-Beverly Consumer Warranty Act.  (Docket No. 77.)  Further, the Third Amended Complaint asserts on behalf of a nationwide class claims for (1) Breach of Written Warranty Under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* ("MMWA"); and (2) Breach of Express Warranty under the laws of various states.

12. Plaintiffs allege that because of defects in design, manufacture, and/or assembly, the CVT Transmissions installed in the Settlement Class Vehicles and/or their related parts are susceptible to malfunction, premature breakdown and mechanical failure.

**Plaintiffs' Considerable Investigation and Discovery**

13. The Settlement followed months of thorough investigation and research into the nature and extent of the alleged problems with the CVT transmission parts.  Prior to the filing of the complaint, Strategic and the Starr Firm devoted several months investigating the claims that the CVT transmission parts installed in certain Audi vehicles were defective, and researching potential causes of action and remedies.

14. At the commencement of our investigations, Class Counsel[2] crafted

---

[2] Class Counsel consists of Strategic and the Law Office of Robert L. Starr ("Starr").  (Settlement Agreement § I. Definitions, G.)  Under the Settlement

a detailed investigation plan that would enable us to understand the manner in which a CVT transmission functions, the concerns expressed by consumers regarding the CVT transmissions, modifications to the transmissions, and communications by Defendants pertaining to the transmissions, valve bodies and the Transmission Control Module (including technical service bulletins).

15. To this end, in addition to reviewing marketing materials to understand how the CVT transmission parts were marketed, Class Counsel consulted blogs and searched for technical service bulletins and service campaigns using "Alldata" (the leading provider of Original Equipment Manufacturers' service and repair information which compiles such information about recalls). Class Counsel also meticulously combed through vehicle complaint forums—including on the NHTSA website—for any complaints about the CVT transmission parts.

16. These initial investigations permitted us, on behalf of the putative class, to obtain a fuller understanding of the design and function of the CVT transmissions, generally, and, to identify the problematic CVT transmissions in the Class Vehicles, specifically. Accordingly, on January 21, 2011, Class Counsel concluded that filing of the instant action against Defendants was justified.

17. Prior to filing the action, I, along with my co-counsel, associated Initiative. Together with the resources of Initiative, Plaintiffs' Counsel conducted substantial investigation and discovery into the facts of this case. For example, Plaintiffs' counsel consulted with independent repair facilities about the alleged defect, including an out-of-state repair facility that specializes in rebuilding CVT transmissions. Early on, Plaintiffs' counsel retained three industry experts, including an engineer and an automotive expert, who

---

Agreement, SLP, Starr, and Initiative Legal Group, APC ("Initiative") are "Plaintiffs' Counsel."

Page 5

DECLARATION OF PAYAM SHAHIAN ISO MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSES, COSTS AND CLASS REPRESENTATIVE INCENTIVE AWARDS

investigated and analyzed the alleged CVT transmission defect. Specifically, at our direction, the expert consultants purchased and disassembled CVT transmissions and examined their multiple components in a laboratory to determine the source of the alleged defects and Defendants' available fixes. Plaintiffs' counsel and their expert consultant also attended an all-day defense inspection of Ms. Sadowska's and Mr. Godbout's vehicles.

18. Plaintiffs' Counsel then familiarized themselves with the results of this testing data and compared them against information they received from Defendants. Ultimately, these results, along with information received in discovery, provided Plaintiffs' Counsel with a more nuanced understanding of the alleged CVT transmission problems, allowing us to determine that the Settlement now before the Court is fair and reasonable.

19. During the course of this litigation, Plaintiffs' Counsel also fielded close to two-hundred inquires and interviewed over sixty-five Class Members about their experiences driving Audi vehicles equipped with CVT transmissions. Plaintiffs' Counsel also reviewed Class Members' repair orders and invoices.

20. Plaintiffs' Counsel also propounded both formal and informal discovery on Volkswagen. In response, Volkswagen produced over twenty-thousand lines of warranty data in an excel spreadsheet and thousands of pages of documents, including engineering drawings and schematics (*e.g.*, technical drawings of CVT transmission components); owners' manuals; service and repair manuals; maintenance and warranty manuals; technical service bulletins; warranty repair invoices; warranty reimbursements; service records; vehicle population numbers for Class Vehicles equipped with CVT transmissions; warranty data; consumer complaint reports; Volkswagen's Field Report Entry Database; Audi Technical Assistance Reports; and information about CVT transmission part sales.

21. Plaintiffs' Counsel and their experts reviewed these documents, a

portion of which were written in German, in great detail, in an effort to evaluate Volkswagen's representations concerning the nature and scope of the alleged defect. Finally, we prepared for and took the deposition of Volkswagen's Rule 30(b)(6) corporate representative in New York on September 6, 2012, further confirming that the Settlement that is before the Court is fair and reasonable.

### Parties' Protracted Arm's-Length Settlement Negotiations

22. The proposed Settlement was the culmination of protracted discussions between the parties, extensive investigation and consultation with their experts, and thorough analysis of the pertinent facts and law in this case. The parties first met in New York in June 2011 to discuss the possibility of a settlement. While that meeting did not result in a resolution, the parties continued their discussions over the next year, during which they participated in additional in-person meetings, as well as numerous telephone conferences. During the various in-person meetings and telephone conferences, the parties advocated their positions, discussed the terms of a fair and appropriate settlement, and exchanged a number of proposals and counter-proposals. During these negotiations, the parties were able to reach an agreement on a number of material terms of the proposed relief to the Class, but were unable to reach an agreement on all the material terms of the proposed relief to the Class.

23. Accordingly, with a soon-approaching filing deadline for Plaintiffs' motion for class certification of October 26, 2012, on June 18, 2012, the parties attended an all-day mediation in San Diego with the Honorable Howard B. Wiener. In advance of the mediation, the parties submitted mediation briefs setting forth their positions.[3] At mediation, the parties were able to reach agreement on all material terms of the proposed relief to the Class. Only after

---

[3] Prior to mediation, Plaintiffs' Counsel worked diligently to determine the strengths and weaknesses of Plaintiffs' case. Among other things, they had concluded their internal testing and had compared the results to documents they had received and reviewed from Volkswagen.

Page 7

DECLARATION OF PAYAM SHAHIAN ISO MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSES, COSTS AND CLASS REPRESENTATIVE INCENTIVE AWARDS

the parties had reached this agreement did they negotiate attorneys' fees and costs and incentive awards, and ultimately, the parties reached an agreement on these terms as well.

24. Subsequent to the mediation, the parties spent a significant amount of time formalizing the Settlement Agreement, including drafting and finalizing the notice to the class, claim form, dealer/repair facility confirmation form, Class Members' good faith and transmission maintenance declaration forms, and trade-in value cost reimbursement forms.

25. Throughout this litigation, Plaintiffs' Counsel also performed the necessary legal investigation and analyses. For example, Plaintiffs' Counsel conducted extensive legal research into the strengths and weaknesses of their legal position and the prospects for class certification. Plaintiffs' Counsel also researched various causes of action available to Plaintiffs, including violations of the consumer protection statutes of various states and California's Secret Warranty Act (including the legislative history), which Plaintiffs alleged Defendants violated by issuing technical service bulletins only to their dealers. Plaintiffs' Counsel also conducted extensive legal research into the appropriateness of a nationwide settlement class in connection with their motion for preliminary approval. Based on our research, Plaintiffs' Counsel also prepared four separate complaints, with the operative complaint asserting claims on behalf both a California and Nationwide Class of current and former Audi owners.

26. On December 21, 2012, Plaintiffs' Counsel, on behalf of Plaintiffs, filed a motion for preliminary approval. At a preliminary approval hearing on January 30, 2013, the Court asked for clarification from the parties about several aspects of the nationwide settlement, requested that certain modifications be made to the Settlement Agreement and Class Notice, and requested that an opt-out form be included with the Class Notice. In Plaintiffs' renewed motion for

preliminary approval, the parties addressed the Court's questions and made the requested revisions to the Court's satisfaction. Accordingly, the Court preliminary approved the parties' Settlement on March 11, 2013.

27. Since the granting of preliminary approval, Plaintiffs' Counsel has continued to protect the interests of the Class. Among other things, Plaintiffs' Counsel has insured that the Administrator's website has the necessary information to assist consumers with their claims, fielded calls from Class Members inquiring about the Settlement, surveyed approximately 50 dealers to confirm that they are aware of the terms of the extended warranty program that went into effect on June 19, 2013, and continue to monitor the claims procedure and the performance of the claims administrator. Plaintiffs' Counsel has dedicated, on a daily basis, staff members, paralegals, and attorneys to handle the calls and answer inquiries by Class Members. Moreover, during this time period, Plaintiffs' Counsel, in an effort to quickly resolve as many unanticipated issues as may arise, have maintained regular contact with counsel for Defendants and the Claim Administrator.

## Implementation of Class Notice

28. Based upon my correspondence with the Claim Administrator, Rust Consulting, I am informed and believe that on June 19, 2013, Rust Consulting notified Class Members of the proposed settlement and upcoming fairness hearing as directed by the Court. Rust mailed out 179,917 Notice Packets to Class Members.[4] I also understand that a one-time publication in the national edition of USA Today provided Class Notice nationwide on June 19, 2013. Also on June 19, 2013, the website cvtsettlement.com went live. My firm and my co-counsel reviewed the website before it went live to make sure it contained the necessary information. It contains instructions on how to contact the Claim

---

[4] The Claim Administrator will provide a supporting declaration on September 6, 2013 pursuant to the Order Granting Preliminary Approval.

Administrator, downloadable copies of the Settlement Agreement, the Notice of Class Settlement, the Claim Forms, and Requests for Exclusion and other relevant information. In addition, the Claim Administrator has notified Class Members of the proposed settlement and upcoming fairness hearing as directed by the Court.

29. Class Members have inquired with my office as well as the Claim Administrator. According to Rust's report, as of July 17, 2013, there have been 2,612 unique visitors on the website. As of July 17, 2013, approximately four weeks after Notice was mailed out, there have been 1245 claims submitted.[5] In addition, there have been 281 opt-outs and two objectors to the settlement. Plaintiffs will address Class Members' favorable comments and objections, in their Reply filing, which is due on August 30, 2013.

### Plaintiffs' Counsel's Support for the Settlement

30. Plaintiffs' Counsel recommend this settlement without hesitation as in the best interests of the Class they have been appointed to represent. Before agreeing to the Settlement on behalf of the Class, Plaintiffs' Counsel carefully considered the strength of Class Members' claims, the benefits provided by the Settlement, and the risk, uncertainty, and delay associated with continued litigation. As previously discussed, Plaintiffs' Counsel consist of three firms that specialize in class action litigation and that spent a great deal of time investigating this case. Plaintiffs' Counsel's view of the Settlement is thus entitled to consideration, and their recommendation of the Settlement on the negotiated terms weighs in favor of final approval.

---

[5] These claims do not include the number of consumers who have received CVT transmission repairs at Defendants' dealers under the extended warranty program. The parties intend to advise the Court of the number and amounts of claims processed under the extended warranty program prior to the final approval hearing.

Page 10

DECLARATION OF PAYAM SHAHIAN ISO MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSES, COSTS AND CLASS REPRESENTATIVE INCENTIVE AWARDS

**Schedules of Fees and Costs**

31. The case was staffed by three law firms, and required a significant commitment by those attorneys, making them unavailable to pursue other opportunities. Strategic for example, staffed all four of its attorneys on this action. One of the necessary consequences for the firm, however, was to delay progress on other matters and interfere with the investigation and filing of other potential cases.

32. I have reviewed a summary of Strategic's billing records and time entries in this action, which are maintained during the regular course of business. The following chart sets forth the regular billable hourly rate (the rates are commensurate with the prevailing rates among firms that regularly litigate class actions). The fee totals reflect the amounts that would have been charged on an hourly basis. Upon the Court's request, Plaintiffs' Counsel will provide the Court with their timesheets. However, under California law, courts may approve attorneys' fees without reviewing detailed timesheets and regularly do so. *See Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 64 (2008) ("detailed timesheets are not required of class counsel to support fee awards in class action cases"); *Margolin v. Regional Planning Com.*, 134 Cal. App. 3d 999, 1006–1007 (1982) (the court may award fees based on time estimates); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254-55 (timesheets are not required of counsel to award attorneys' fees in class action cases); *Glendora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465, 470-471, 478 (1984) (a court may approve attorneys' fees based on billing summaries provided by counsel).

| Schedule of Fees | | | | | |
|---|---|---|---|---|---|
| **Attorney** | **Title** | **Adm. to CA Bar** | **Rate** | **Hours** | **Fees** |

| Schedule of Fees | | | | | |
|---|---|---|---|---|---|
| **Attorney** | **Title** | **Adm. to CA Bar** | **Rate** | **Hours** | **Fees** |
| Payam Shahian | Managing Partner | 2003 | $570 | 588.4 | $335,388.00 |
| Gregory Yu | Senior Counsel | 2004 | $515 | 159.8 | $82,297.00 |
| Ramtin Shahian | Associate | 2011 | $325 | 121.6 | $39,520.00 |
| Christopher Swanson | Associate | 2011 | $325 | 244.3 | $79,397.50 |
| **Total** | | | | 1,114.1 | $536,602.50 |

In the exercise of billing discretion, Strategic wrote off approximately 10% of its lodestar listed above. Accordingly, Strategic's requested fee before applying a risk multiplier for purposes of the Motion for Attorneys' Fees is $482,942 based on approximately 1002.7 attorney hours.

**Experiences of Other Attorneys at Strategic Legal Practices, APC**

33. Christopher Swanson received his law degree from UCLA in 2011, where he distinguished himself academically, graduating in the top third of his class and with experience in moot court, the transactional lawyering team, and as an editor of the Journal of Law and Technology. He has worked at Strategic Legal Practices since July of 2012, and his prior professional experience includes Hunt Ortmann and the Los Angeles City Attorney's Office. Mr. Swanson has experience with class actions, consumer protection law, and breach of warranty claims.

34. Ramtin Shahian received his undergraduate degree from the University of California, Los Angeles, in 2007, where he majored in history. He subsequently attended Southwestern Law School, graduating in 2010. He has experience with class actions, consumer protection law, and breach of warranty

Page 12

DECLARATION OF PAYAM SHAHIAN ISO MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSES, COSTS AND CLASS
REPRESENTATIVE INCENTIVE AWARDS

claims.

35. Gregory Yu received his law degree in 2003 from the University of Southern California. From 2004 to 2006, Mr. Yu worked at a prominent Southern California insurance and employment defense firm. From 2006 to 2010, he worked at a Plaintiff-side class action firm specializing in wage-and-hour and consumer law. Since 2011, Mr. Yu has been working in an of counsel capacity with Strategic Legal Practices, APC litigating consumer and employment class action cases. In his career, Mr. Yu has helped recovered millions of dollars on behalf of employees and consumers nationwide

36. Plaintiffs' Counsel's Partner and Senior Counsel hourly rates range from $490 to $675. These rates are comparable to those charged by the Los Angeles offices of Sheppard Mullin Richter & Hampton ("Sheppard Mullin") ($505 to $860) and Manatt, Phelps & Phillips ("Manatt Phelps") ($540 to $850). *See* 2011 Nationwide Sampling of Law Firm Billing Rates – The National Law Journal, December 19, 2011 ("2011 Nationwide Sample of Law Firm Billing Rates") (a true and correct copy of which is attached as Exhibit A).

37. These Partner and Senior Counsel rates are comparable to those approved for other plaintiff's firms. *See*, *e.g.*, *Faigman v. AT&T Mobility LLC*, 2011 U.S. Dist. LEXIS 15825, *2 (N.D. Cal. Feb. 15, 2011) (approving hourly rates of $650 an hour for partner services); *Richard v. Ameri-Force Mgmt. Servs., Inc.* (San Diego Super. Ct. No. 37-2008-00096019, Aug. 27, 2010,) ($695 to $750 an hour for partners); *Barrera v. Gamestop Corp.* (C.D. Cal. No. CV 09-1399, Nov. 29, 2010) ($700 an hour for partners); *Anderson v. Nextel Retail Stores, LLC* (C.D. Cal. No. CV 07-4480, June 20, 2010) ($655 to $750 an hour for partners); *In re Wells Fargo Loan Processor Over-Time Pay Litigation*, 2011 WL 3352460 (N.D. Cal. No. 07-1841, Aug. 2, 2011) (approving hourly rates of $500-$675 for attorneys); *In re Nuvelo, Inc. Securities Litig.*, 2011 WL 2650592 (N.D. Cal. No. 07-04056, July 6, 2011) (approving $500-$700 for partners); *In*

Page 13

*re Charles Schwab Corp. Securities Litig.*, 2011 WL 1481424 (N.D. Cal. No. 08-01510, Apr. 19, 2011) (approving $380-$650 for partners); and *Buccellato v. AT&T Operations, Inc.*, 2011 WL 4526673 (N.D. Cal. No. 10-00463, June 30, 2011) (approving $290-$740 for attorneys).

38.  My $550 hourly rate is consistent with my approved rates in other cases.  See *In Re Mini Windshield Actions*, Case No. 2:10-cv-01151-ABC (PJWx) (C.D. Cal. October 1, 2012) (approving my hourly rate of $550 as the managing partner of SLP); *Hickson v. South Coast Auto Insurance Marketing, Inc.*, Case No. BC390395 (L.A. Super. Ct. May 27, 2012) (approving my hourly rate as a former associate at $520); *Kabamba v. Victoria's Secret Stores, LLC*, Case No. BC368528 (L.A. Super. Ct. August 19, 2011) (approving my hourly rate as a former associate at $490); *Gong-Chun v. Aetna, Inc.*, Case No. 09-CV-01995-AWI-SKO (E.D. Cal. July 11, 2011) (approving my hourly rate of $520); *Gutierrez v. Lowe's HIW, Inc.*, Case No. 657474 (Stanislaus Super. Ct., July 8, 2011) (approving my hourly rate of $490); *Marsikian v. Mercedes-Benz USA, LLC*, Case No. 08-CV-04876-AHM-FMO (C.D. Cal. May 17, 2010) (approving my hourly rate of $445).

39.  Plaintiffs' Counsel's hourly rates for Associates is $325.  These rates are also comparable to those charged by Sheppard Mullin.  Sheppard Mullin's Associate rates range from $275 to $635 an hour.  *See* 2011 Nationwide Sampling of Law Firm Billing Rates.  Class Counsel's counsel hourly rates are also comparable to those of Manatt Phelps.  Manatt Phelps' average Associate hourly rate is $464.  *Id.*  Class Counsel's average Associate rate is $367.50.

40.  Plaintiffs' Counsel's Associate rates are comparable to those approved for other plaintiff's firms.  *See*, *e.g.*, *Faigman v. AT&T Mobility LLC*, 2011 U.S. Dist. LEXIS 15825, *2 (N.D. Cal. Feb. 15, 2011) (approving hourly rates of $500 an hour for associate attorney services); *Richard v. Ameri-Force Mgmt. Servs., Inc.* (San Diego Super. Ct., August 27, 2010, No. 37-2008-

00096019) (approving $495 an hour for associates); *Barrera v. Gamestop Corp.* (C.D. Cal. Nov. 29, 2010, No. CV 09-1399) (approving $475 an hour for associates); and *Anderson v. Nextel Retail Stores, LLC* (C.D. Cal. June 20, 2010, No. CV 07-4480) (approving $300 to $515 an hour for associates).

41. Likewise, the hourly rates of Ramtin Shahian and Gregory Yu are consistent with previously approved rates. See *Ehrlich v. BMW of North America, LLC*, Case No. CV 10- 01151-ABC-PJW (C.D. Cal. October 1, 2012) (approving Mr. R. Shahian's hourly rate of $325 and Mr. Yu's hourly rate of $495); *Marsikian v. Mercedes-Benz USA, LLC*, Case No. 08-CV-04876-AHM-FMO (C.D. Cal. May 17, 2010) (approving Mr. R. Shahian's summer associate hourly rate of $210).

42. Over the course of this litigation, my firm Strategic Legal Practices, APC has incurred the following costs and expenses:

| Schedule of Expenses | |
|---|---:|
| **Expense Categories** | **Total** |
| Court Reporters, Transcripts & Depositions | $113.40 |
| Expert & Consultants | $48,918.25 |
| Delivery & Messenger | $286.00 |
| Pacer, Copying and Printing | $1,956.60 |
| Travel, Lodging and Meals | $1,440.42 |
| **TOTAL** | **$52,714.67** |

43. These incurred costs and expenses, which were recorded during the regular course of business, were reasonable and necessary to properly prosecute this matter as a potential class action and obtain a class-wide settlement.

44. Plaintiffs' Counsel have agreed that after their deduction of costs

and expenses, and payment of attorney's fees to attorney Dara Tabesh, to allocate all attorneys' fees awarded by the Court in the following manner: 45% to ILG, 33% to SLP, and 22% to Starr. Moreover, Plaintiffs' Counsel have agreed to share equally in the 5% referral fee payment that Starr intends to pay attorney Marc Legget from Starr's 22% portion of attorney fees.

45. Many Class members have contacted counsel for Plaintiffs asking questions about the terms of the settlement agreement and claim process, the date final approval is granted, and the date the settlement becomes effective; Class Counsel anticipate many more such inquiries in the future. This lawsuit required Plaintiffs' Counsel to commit a significant number of hours to investigate and resolve the claims of the Class. The Settlement constitutes a fair, adequate, and reasonable compromise of the claims at issue.

46. Ms. Sadowska, Mr. Godbout, and Ms. DenDekker each provided documents and consulted with counsel about the claims in this case, and were prepared to assist through the course of the litigation. Plaintiffs reviewed the allegations of the Complaint and the Settlement Agreement, kept in constant contact with counsel regarding the status of the case, and subjected themselves to multiple interviews. Moreover, Plaintiffs Sawdoska and Godbout made their vehicles available for inspection. Plaintiffs committed a substantial amount of personal time to support a case in which they had a modest personal interest but that provided considerable benefits to the Class Members—a commitment undertaken without any expectation or guarantee of incentive awards. In light of Plaintiffs' sacrifices, as well as the achieved benefits to the Class, which in many instances can exceed the requested enhancement award, the Court should approve the requested incentive payments of $5,000 to Ms. Sadowska, $5,000 to Mr. Godbout, and $1,000 to Ms. DenDekker.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 19, 2013 at Los Angeles, California.

*[signature]*

Payam Shahian

Page 17

DECLARATION OF PAYAM SHAHIAN ISO MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSES, COSTS AND CLASS REPRESENTATIVE INCENTIVE AWARDS